**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

U.S. DISTRICT COURT - N.D. OF N.Y.
**FILED**
MAY 06 2021
AT_____ O'CLOCK
John M. Domurad, Clerk - Albany

----------------------------------------------------------------  )
**ROBERT CRAIG CASSIDY**                                          )
                                                                  )
                                                                  )   **CIVIL CASE NO.:** 8:21-cv-521
                                                                  )   (GTS/CFH)
**PLAINTIFF**                                                     )
                                                                  )
**vs.**                                                           )
                                                                  )
                                                                  )   **IMPOSING A BILL OF**
**NEW YORK STATE INSURANCE FUND;**                               )   **ATTAINDER (BILL OF**
**NEW YORK STATE  WORKERS'**                                      )   **PAINS AND PENALTIES)**
**COMPENSATION BOARD;**                                          )   **UPON PLAINTIFF**
**HONORABLE LETITIA JAMES, ATTORNEY**                            )
**GENERAL OF THE STATE OF NEW YORK;**                            )
**ASSISTANT ATTORNEY GENERAL**                                   )
**BRIAN M. MATULA, PERSONALLY;**                                 )
 **JOSEPH SLATER,  ESQ., PERSONALLY;**                           )
**KELSEY  LYNN  RAGA, PERSONALLY; THE**                          )
**FOLLOWING NINE MEMBERS OF THE**                                )
**NEW YORK WORKERS' COMPENSATION**                               )
**BOARD, PERSONALLY: FREIDA FOSTER,**                            )
**ELLEN O. PAPROCKI, LINDA HULL,**                               )   **PURSUANT TO**
**FREDRICK M. AUSILL, LORAN LOBBAN,**                            )   **42 U.S.C. 1983**
**STEVEN A. CRAIN, MARK R. STASKO,**                             )
**SAMUAL G. WILLIAMS, MARK HIGGINS.**                            )   **and**
 **and DARLENE DORSETT, PERSONALLY**                             )
                                                                  )   **ARTICLE I, SECTION 9,**
                                                                  )   **CLAUSE 3,  SECTION 10,**
                                                                  )   **CLAUSE 1,  of**
                                                                  )   **THE UNITED STATES**
                                                                  )   **CONSTITUTION**
_____**DEFENDANTS**_____  )

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

PLAINTIFF IN THE ABOVE CAPTIONED ACTION ALLEGES AS FOLLOWS:

### JURISDICTION

1. This is a civil action seeking relief and damages to defend and protect the

Rights guaranteed by the Constitution of the United States of America.

This action is brought pursuant to 42 U.S.C.1983; ARTICLE I, SECTION 9,

CLAUSE 3 (No Bill of Attainder or ex post facto Law shall be passed);

and ARTICLE I, SECTION 10, CLAUSE 1 (which reads in part "No State

shall … pass any Bill of Attainder, ex post facto Law, or Law impairing the

obligation of Contracts …").

2. Plaintiff currently has before the Northern District of New York case

8:18-cv-00394 (BKS/DJS) (hereinafter "394").   The defendants in this

instant action are not defendants in action "394 " nor is the cause of action

the same in this action  as is charged in action "394."

### DIVERSITY JURISDICTION

3. PLAINTIFF Robert Craig Cassidy resides at and has resided at

43 Pleasant Street, City of Rutland, County of Rutland, State of Vermont

since January 1976.

4. Plaintiff carries a Vermont driver's license, has voted in Vermont

municipal and state-wide elections for more than forty years, and has filed

*1*

Vermont and Federal income tax returns with a Vermont address also for more than forty years, and was honorably discharged from the U.S. Army to Rutland, Vermont in 1973.

5. Defendant NEW YORK STATE INSURANCE FUND (hereinafter NYSIF) is an agency of the State of New York and is located in Albany, New York.  Defendant NEW YORK STATE WORKERS' COMPENSATION BOARD (hereinafter WCB) is an agency of the State of New York and is located in Schenectady, New York.  Defendant LETITIA JAMES is the Attorney General of the State of New York whose business address is "The Capitol" and who lives within commuting distance of Albany New York.  Defendant BRIAN M. MATULA is an Assistant Attorney General whose business address is "The Capitol" and who lives within commuting distance of Albany, New York.  Defendant JOSEPH SLATER is a "Senior Attorney" of the Workers' Compensation Board in Schenectady, New York and lives within commuting distance of Schenectady.  Defendant KARA LYNN RAGA is an underwriter at the New York State Insurance Fund and lives within commuting distance of that organization. Defendants FREIDA FOSTER, ELLEN O. PAPROCKI, LINDA HULL, FREDERICK M. AUSILL, LORAN LOBAN, STEVEN A. CRAIN, MARK R. STASKO,

SAMUAL G. WILLIAMS, and MARK HIGGANS were jointly and severally members of the New York Workers' Compensation Board during the time period in which Plaintiff was damaged by the "proprietary computer-based system designed, operated and maintained by the Board…." and DARLENE DORSETT who knowingly cancelled Plaintiff's Workers' Compensation policy without notice in which Plaintiff had successor in interest rights and on which Plaintiff had paid multiple premiums. Dorsett works at 84 Montcalm Street, Ticonderoga, New York 12883.

6. To the best of Plaintiff's information and belief, all Defendants live and work in the State of New York, and Plaintiff Cassidy resides in the State of Vermont. To the best of Plaintiff's information and belief,  Diversity Jurisdiction exists as a matter of Law.

7. Plaintiff's building at 105 Montcalm Street in Ticonderoga, County of Essex, State of New York has been lost to Plaintiff due to the unconstitutional actions of Defendants, and is appraised by the Town of Ticonderoga at $124,000.00 (EX-01).  That alone should establish the $75,000.00 required for Diversity , but losses to Plaintiff also include the value of the business operated at 105 Montcalm Street($15,000.00), the $22,500.00 wrongfully claimed by the New York State Workers' Compensation Board, the approximately $49,000.00 Plaintiff has invested

into the business, the value of five years of Plaintiff's life ($75,000.00),

financial damages inflicted by the March 2017 physical injury (EX-02)

upon Plaintiff by Defendants' actions($15,000.00), expenses associated with

bringing suit(5,000.00) and serving defendants' with process,

and debunking the "judgment" fraud perpetrated by defendants

from 2016 through 2019($3,000.00);  all in all some $300,000.00.

## BACKGROUND

8.  On June 2, 2016, the WCB issued a $12,000.00 penalty (EX-03)against

Plaintiff alleging  Plaintiff carried no workers' compensation policy.  On

that very same day Plaintiff's most recent premium check for worker's

compensation was paid by Glens Falls National Bank ! (EX-04)

9.  Plaintiff  appealed the $12,000.00 penalty which was rejected out of

hand on October 7 2016 because Plaintiff  was not in "compliance." (EX-05

From May 2016 to April 2020 Plaintiff was unaware that an NYSIF

underwriter named Kelsey Lynn Raga had, at the instigation of Darlene

Dorsett (insurance broker and owner of  L. Stockton Martin Agency of

Ticonderoga, New York), cancelled workers' compensation

policy 1351815-4 without authorization from or even informing Plaintiff.

Darlene Dorsett is an insurance agent residing in Ticonderoga New York

4

who had represented both former owner of Mountain Time Furniture,

Richard Harker, and current owner of Mountain Time Auctions, Antiques,

and Mattresses, Robert Craig Cassidy.  Robert Craig Cassidy is Plaintiff in

the instant action.

10.  From September 2015 through May 2016 Plaintiff had been attempting

to have the name and address of Richard Harker removed from policy

1351815-4 and the name and address of Plaintiff Cassidy added to the

policy.  From September 2015 to May 2016, Cassidy had paid worker's

compensation premiums.

11. The effective date of the policy cancellation was June 23, 2016 (EX-06) ;

after that date policy 1351815-4 was no longer transferable. For  almost

four years, until Defendants in 394 released discovery  in April 2020,

neither the Attorney General, the NYSIF,  the WCB, nor Kelsey Lynn Raga

informed Plaintiff of the cancellation of his workers' compensation policy.

12.  Beginning about February 2018 the WCB informed Plaintiff that

a judgment existed against  Plaintiff. (EX-07)  On 2 April 2018 Plaintiff

filed action 394 which action was opposed by the Attorney General.

According to  WCB "Senior Attorney" Joseph Slater, a judgment was filed

upon this Plaintiff on March 30, 2018.  In fact, no judgment was filed. How

is it that WCB is allowed to falsely throw around the judgment boogeyman

and  face no consequences ??

13.  On May 4 2018 the Attorney General invoked in its response to

Plaintiff's April 2 2018 action the Rooker-Feldman Doctrine which held that

a victim under New York State judgment could not re-litigate that judgment

in Federal Court.

14.  From May 2018 through June 2019 Plaintiff Cassidy  labored under the

Attorney General's assertion that Rooker-Feldman would eventually destroy

Plaintiff's action 394.

15. Sinking to new lows, the Attorney General in a June 28 2019 filing for

dismissal of Plaintiff's action 394 introduced an "Affirmation of Joseph

Slater, a Senior Attorney with the Workers' Compensation Board" claiming

"under oath" that a judgment had been filed upon Plaintiff on

March 30 ,2018, and insisting that Plaintiff's action 394 be dismissed .

16.  On July 16, 2019,  Plaintiff obtained from Essex County Clerk Joseph

A. Provoncha a notarized letter (EX-08 & 09) which stated in part "No

judgments or liens were found to be filed in this Office against

Robert Craig Cassidy or Mountain Time Auctions, Antiques and Mattresses.

17.  For about eighteen months from February 2018 to July 2019 the

Attorney General of the State of New York had been submitting false

moving papers to both the Court and the Plaintiff regarding the existence

of a non-existent judgment.  Senior WCB Attorney Slater had gone the

Attorney General one better -- Slater had borne false witness under oath

claiming the non-existent judgment did in fact exist.

18.  Perhaps those who are "Officers of the Court" may ho-hum the Slater

Affirmation with a "no harm- no foul" attitude, but to a pro-se litigant

Rooker-Feldman is like a diagnosis of pancreatic cancer -- you are going to

die,  but first,  lots of pain.  Had a judgment really been in place, Plaintiff's

394 action would have been over and Plaintiff with no hope of recourse

would be faced with a $22,500.00 judgment falsely obtained.

Plaintiff estimates that the aggregate annual salaries of the Attorney General

of  New York State James,  A.A.G. Matula,  and Senior Attorney Slater

exceed $400,000.00 dollars, yet not one of these licensed attorneys  would

do what dimwit Plaintiff would have done --- Get a paper copy of the

judgment in hand before ruining an opponent's life !!

## BILLS OF ATTAINDER

19.  2nd Circuit Court of Appeals in Acorn v. U.S. 618 F 3d 125 addressed

Bills of Attainder:

> The scope of the Bill of Attainder Clause, however has
> been interpreted as wider than the historical definition of
> "a bill of attainder" See Matter of Extradition of McMullen,
> 989 F 2d 603, 606-07(2nd Cir 1993) (en banc) (The Bill of
> Attainder Clause broadly … prohibits bills of pains and
> penalties as well as bills of attainder); South Carolina v.
> Katzenbach, 383 U.S. 301,324, 86 S. Ct. 803, 15 L. Ed 769
> (1966) (stating that the Bill of Attainder Clause provides
> "protections for individual persons and private groups"
> Brown, 381 U.S. at 442, 85 S. Ct. 1707 (stating that the
> Constitution's prohibition against bills of attainder was
> Intended not as a narrow , technical (and therefore soon
> to be outmoded) prohibition, but rather as an implementation
> of the separation of powers, a general safeguard against
> legislative exercise of the judicial function, or more simply --
> trial by legislature."  It can be said that the broadness of the
> American prohibition of bills of attainder under Article I ,
> Section 9 is more a reflection of the Constitution's concern
> with fragmenting the government power than merely
> preventing the recurrence of unsavory British practices…

20.  The 2nd Circuit continued in Acorn:

> In its contemporary usage, the Bill of Attainder Clause
> Prohibits any "law that legislatively determines guilt and
> Inflects punishment upon an identifiable individual
> without provision of the protections "of a judicial trial."
> Selective Serv. Sys. V. Minn. Pub. Interest Research Grp.,

468 U.S. 841, 846-47, 104 S. Ct. 3348, 82 L. Ed. 2d 632
(1984)  That is, the Supreme Court has identified three
elements of an unconstitutional bill of attainder:
(1) "specification of the affected persons," (2) "punishment"
(3) "lack of a judicial trial" id. At 847, 104 S. Ct. 3348.

21. The "affected persons" are those who are "Not In Compliance",

which translates to "those who have not paid the levied penalty."

Or, in the alternative, Plaintiff is a "class of one":  One who had paid all

workers comp premium payments assessed, filed paperwork to assign policy

1351815-4 to himself, and actually settled a workers comp claim

(EX-10) with NYSIF --  only to be told that Plaintiff had no policy !

The U.S. Supreme Court in Edelman v. Jordan 415 U.S. 651 (1974) held:

>…the District Court by a permanent injunction required
>compliance with the federal time limits and also ordered the
>state officials to release and remit AABD benefits wrongfully
>withheld ….
>*Held:* The Eleventh Amendment of the Constitution bars that
>portion of the District Court's decree that ordered retroactive
>payments of benefits. Pp. 415 U.S. 658-678,
>(a)  A suit by private parties seeking to impose a liability
>payable from public funds in the state treasury is
>foreclosed by the Amendment (11[th]) if the State does not
>consent to suit. Pp. 415 U.S.  662-663

Had Plaintiff paid the $22,500.00 penalty, there is no procedure at law for

Plaintiff to recover lost funds.  The State of New York wishes to have it both

ways: Not only is the State immune from suit, but it does not have to return

any funds questionably expropriated.

9

22. The actions of the WCB run afoul of the Bill of Attainder Clause in that First: there was no judicial hearing held before $12,000.00 was levied upon Plaintiff.  Second: there was no post deprivation relief as the Plaintiff was "Not In Compliance" and therefore his appeal could not be considered and (b) the Plaintiff would have to forfeit $18,000.00 to even have his appeal considered, not by a Court but by WCB bureaucrats. (Yes, the penalty had grown by $6,000.00 to $18,000.00 while the WCB took 90 days to not consider the appeal.)

23. Finally, regarding Attainder, Plaintiff offers the Court the opinion of  A.A.G. Matula from page 4 of the A.A.G.'s July 2019 pleading (EX-11):

> The Workers" Compensation Law establishes a procedure whereby Workers' Compensation Board statutory penalties can be converted to a judgment after certain administrative steps are completed *See* WCL 23, 26  52(5)

Plaintiff calls the Court's attention to the words "statutory penalties can be converted to a judgment after certain administrative steps are completed." **Statutory penalties** are assigned by the legislature not a court, and no mention of a court is made by A.A.G. Matula because no court is involved. The absence of judicial involvement is Constitutionally  fatal to New York's "certain administrative steps…"

24.  In footnote 2 of page 4, AAG Matula writes:

> The Board's "Insurance Compliance-2" system, or
> "IC-2" system is a proprietary computer-based system
> designed, operated and maintained by the Board, which
> the Board uses to ensure that New York State employers
> comply with their respective workers' compensation
> coverage requirements.  As is germane to the instant action,
> the IC-2 system is also utilized by the Board to issue penalty
> notices and, ultimately, to issue judgments to non-compliant
> employers, as well as to organize and adjudicate all
> employer-initiated redetermination requests. (EX-11)

25.  Plaintiff probably could not have written a better indictment against the

Workers' Compensation Board than that composed by A.A.G. Matula.

 First, IC-2 is "designed, operated, and maintained by the Board."  Clearly,

"the Board" must bear individual legal responsibility for the  errors of the

IC-2 system.

26. Joseph Slater's Affirmation used by A.A.G Matula to prove his case

 States that  IC-2 issued a judgment on this Plaintiff on or about March 30

2018.  That judgment disappeared un-filed into the labyrinth of WCB for

some **fifteen months** (April 2018 to June 2019).  So much for the

"organize" part of "organize and adjudicate"  done by "The Board."


**27.  Courts** are supposed to "adjudicate" (so that citizen defendants such as

this Plaintiff was back in 2016) can offer evidence of "compliance" to

mitigate penalty causing behavior, but having human judges preside could interfere with the gathering up of three million or more dollars annually in unrestricted revenue for WCB.

 Life is so much easier for Defendants when IC-2 pumps out another pre-programmed "cannot consider appeal" letter because victim is "not in compliance."

28.  IC-2 also laid a judgment upon this Plaintiff on or about November 14 2019 which action was psychologically and emotionally devastating.  According to A.A.G. Matula, the judgment was issued "accidentally."  Plaintiff reminds the Court, it was "the Board" which "designed, operated, and maintained" good old "IC-2." The "Board " should bear civil responsibility for an IC-2 system that "accidentally" levies $22,500.00 judgments upon victims such as this Plaintiff !

## NO STATE SHALL … PASS ANY … LAW IMPAIRING THE OBLIGATION OF CONTRACTS
( Article I, Section 10, United States Constitution)

29.  Plaintiff believes Kelsey Lynn Raga of  NYSIF has violated Article I, Section 10, Clause 2 of the U.S. Constitution: "No State shall… pass … Law impairing the Obligation of Contracts …." and gives as his reasoning the following:

30. "A Law Dictionary, Adapted to the Constitution and Laws of the United

States, published in 1856 by John Bouvier" reads in part : (EX-12)

> 2. Contracts, when considered in relation to their effects, are
> executed, that is, by transfer of the possession of the thing
> contracted for: or they are executory, which gives only a right
> of action for the subject of the contract.  Contracts are also
> express or implied.  The Constitution makes no distinction
> between one class of contracts and the other. 6 Cranch, 135
> 7 Cranch, 164.
> 3. The obligation of a contract here spoken of is a legal, not a
> mere moral obligation; it is the law which binds the party to
> to perform his undertaking. The obligation does not inhere or
> subsist in the contract itself, *proprio vigor,* but in the law
> applicable to the contract. 4 Wheat. R. 197; 12 Wheat. R. 318;
> and this law is not the universal law of nature, but it is the law
> of the state where the contract is made. 12 Wheat. R. 213.
> Any law which enlarges, **abridges,** or **in any manner changes
> the intention of the parties, resulting from the stipulations
> in the contract, necessarily impairs it.** 12 Wheat. 256;
> id. 327; 3 Wash. C.C. Rep319; 8 Wheat. 84; 4 Wheat . 197.
> **(emphasis mine)**

31.  Richard D. Harker and Plaintiff Robert Craig Cassidy traveled to

Elizabethtown, New York, together, on August 19 2015, Harker to file a

discontinuance certificate for Mountain Time Furniture, Cassidy to

file a business certificate for Mountain Time Auctions, Antiques, and

Mattresses. (EX-09)

*13*

32. Plaintiff's photocopier does not transcribe legal sized documents which is why you will find three partial copies of the original. (EX-13,14, & 15) On each photocopy the Court will find a paragraph which begins with a pre-printed "**\*I FURTHER CERTIFY** that I am the successor in interest to" and contains the handwritten name of "Richard D. Harker."

At 3:44 P.M. on the 19th of August 2015 all the assets and liabilities of Mountain Time (INCLUDING Workers' Compensation policy 1351815-4) became Cassidy's responsibility(as successor in interest), NOT HARKER'S AND CERTAINLY NOT THE RESPONSIBILITY OF INSURANCE BROKER DARLENE DORSETT.

33. On February 11 2016 Darlene Dorsett wrote a letter to Plaintiff Cassidy which contained a paragraph which stated "**As a courtesy I have tried to help you resolve this issue (**Dorsett refers to the signatures on the Assignment of Policy NYSIF form).  **Now I am leaving it in your hands as Mr. Harker no longer carries insurance with my agency.**" (EX-16)

34.  On 24 May 2015 NYSIF underwriter Kelsey Lynn Raga received an "Accord"e-mail from Darlene Dorsett who was seeking to cancel workers' comp policy 1351815-4  (EX-17) Raga told Dorsett that to cancel the policy Dorsett would have to sign a cancellation e-mail and state "business

14

sold"(EX-17).

35. Dorsett never contacted Plaintiff Cassidy before getting involved with

NYSIF's Raga and Raga never contacted Plaintiff Cassidy regarding

Raga's cancellation machinations with Dorsett.  Plaintiff did not discover

when and by whom workers' compensation policy 1351815-4 was

cancelled until Defendant's discovery in action 394 occurred in April 2020.

WCB and NYSIF regulations require notification by certified or registered

mail when a policy is canceled.  Plaintiff never received a certified or any

other letter !

36.  Kelsey Raga sent Darlene Dorsett an e-mail celebrating the cancellation

of policy 1351815-4.  (EX-18) The e-mail contained several falsehoods

including paragraph one, paragraph three, and paragraph five.

37. In what appears to be a CYA letter (EX-19)to Raga from Dorsett,

Darlene Dorsett tells the NYSF underwriter that "Policy number A13518154

payments have been made by the new owner Robert Craig

Cassidy…"(paragraph 2)  At paragraph  5 Dorsett writes "The new owner of

the property Robert Craig Cassidy business name is Mountain Time

Auctions, Mr. Robert Craig Cassidy Fed # is 47 5236656.  I have attached a

copy of his payroll report to show that.  **Also attached please find a copy**

**of a bank statement showing that he paid the workers comp payment**

**under Mr. Harker's policy number. (emphasis mine)**

38.  On page two paragraph 2 of Dorsett's letter(EX-20),  Darlene writes

**Mr, Cassidy indicates that he received a notice that he is facing over**

**$12,000 fine.  I do know that he has been paying workers comp but not**

**under his name or his business name and maybe he can receive credit**

**for those payments. (emphasis mine)**

39.  And what exactly did Kelsey Lynn Raga do to ameliorate this situation,

Exactly what NYSIF trained her to do --- Absolutely Nothing !

40.  Plaintiff asks the Court to note at the very bottom lower right of EX-20

in bold  print "**Defendants Disclosure - 0074**"  Plaintiff believes that

notation was placed on this document by the Attorney General's office and

they also did nothing to mollify this situation.

41.  In Plaintiff's opinion, the current penalty system at NYSIF and WCB

should be shut down by injunction until such time as consumer protections

Can be firmly built into the IC-2 and the underwriters at NYSIF.  The

mission of NYSIF and WCB should be to provide aid to those injured at

work not to entrap weak fish and gloat.

42. Since Plaintiff has little doubt the Attorney General will raise statute of

limitations as a defense to this action, note that a "Contract in Writing"

(N.Y.C.P.L.R. 213(2) such as the worker's comp policy has a six year limit

which means the limitation date would be May of 2022. (EX-20A)

43. Erie R.R. v. Tompkins 304 U.S. 64,  58 s. Ct. 817 (1938) sets this rule:

> Except in matters governed by the U.S. Constitution or by
> Acts of Congress, the law to be applied in any case is the
> law of the state.  Whether the law of the state shall be
> declared by its legislature or by its highest court in a
> decision is not a matter of federal concern.  There is no
> federal general common law.  Congress has no power to
> declare substantive rules of common law applicable in a
> state, whether they be local in their nature or general, be they
> commercial law or a part of the law of torts.

In the instant case,  New York's statute of limitations of six years should

apply.

44. Regarding Federal Statutes of Limitations, Plaintiff did not become

aware of Raga/Dorsett canceling workers' compensation policy 1351815-4

until April 2020.  Plaintiff argues Federal Statute of Limitations runs until

April 2023.

45. Plaintiff also expects A.A.G. Matula to claim Attorney General James

should not be a defendant in this action.  Attorney General James name and

rank head documents submitted to the Court in action 394 (EX-21).  In

Plaintiff's deposition notice of December 15 2020 Attorney General Letitia

James is the only attorney noted (EX-22).  The Attorney General was, I

believe, the only Attorney noted on the jacket of WCB Senior Attorney

Joseph Slater's bearing false witness sworn under oath "Affirmation" of

June 28 2019.

46.  Plaintiff Cassidy in action 394 wrote a four page letter to

Attorney General Letitia James on August 23 2019 primarily discussing

WCB Senior Attorney Joseph Slater's bearing false witness  in his

"Affirmation"(EX-23, 24, 25, 26) .  The Attorney General should not be

able to claim ignorance of  Plaintiff Cassidy's adventures with NYSIF and

WCB and she has, in Plaintiff's opinion, a duty to supervise A.A.G.

Matula's  submissions issued in her name.

### RELIEF SOUGHT BY PLAINTIFF

47.  Plaintiff requests the Court to issue a temporary restraining order

halting the issuance of not in compliance IC-2 penalties from a

Constitutionally repugnant  "…system designed, operated, and maintained

by the Board."   The " IC-2 System is also utilized by the Board to issue

penalty notices, and ultimately, **to issue Judgments**  to non-compliant

employers …. "  (emphasis mine)

Plaintiff is willing to appear either in person or by submission at a hearing

to make an injunction permanent.

*18*

41. Plaintiff further requests parties to this action be given an opportunity to brief the applicability of immunities almost certain to be claimed by defendants.  Plaintiff grants that Immunities are necessary to limit harassment, but should not be accepted by Courts to hide administrative error, corruption, or incompetence all of which may have occurred during the events that spurred this action.

42.  Finally, once responsibilities are determined, Plaintiff requests trial by jury to determine financial compensation, if any, due Plaintiff for losses inflicted upon him by Defendants.

.

**DECLARATION:**

I, Robert Craig Cassidy, Plaintiff in this action, do hereby declare:

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed at the City of Rutland, County of Rutland, State of Vermont on this 4th day of May 2021

Robert Craig Cassidy

SWORN TO BEFORE ME AND IN MY

PRESENCE THIS _4_ DAY OF _May_ 20_21_

NOTARY PUBLIC

MY COMMISSION EXPIRES: 1-31-2023

JULIE A. TRIPODI
NO. 157.0001244
COMMISSION EXPIRES
1-31-2023
Notary Public State of Vermont

20