UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ROBERT CRAIG CASSIDY,

*Plaintiff,*

-against-                                                      21-CV-0521

WORKERS' COMPENSATION BOARD, LETITIA            GTS/CFH
JAMES, BRIAN W. MATULA, JOSEPH SLATER,
KELSEY LYNN RAGA, FREIDA FOSTER, ELLEN O
PAPROCKI, LINDA HULL, FREDERICK M. AUSILI,
LORAN LOBBAN, STEVEN A. CRAIN, MARK R.
STASKO, SAMUAL G. WILLIAMS, MARK HIGGINS,
DARLENE DORSETT, NEW YORK STATE
INSURANCE FUND,

*Defendants.*

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

LETITIA JAMES
Attorney General of the State of New York
Attorney for Defendants Raga, Lobban,
    Williams, Hull, Ausili, Stasko, Foster,
    Higgins, Paprocki, Slater, NYS Insurance
    Fund and Workers' Compensation Board
The Capitol
Albany, New York 12224-0341

John F. Moore
Assistant Attorney General, of Counsel
Telephone:  518 776 2293
Fax: 518-915-7738 (Not for service of papers)

Dated:  Albany, New York
        September 30, 2021

# Table of Contents

PRELIMINARY STATEMENT…………………………………………………………..1

STATEMENT OF FACTS…………………………………………………………...2

ARGUMENT………………………………………………………………………....5

    I.      THE COMPLAINT AGAINST DEFENDANTS NEW YORK WORKERS' COMPENSATION BOARD AND NYSIF SHOULD BE DISMISSED, AS THE CLAIMS AGAINST THESE STATE AGENCIES ARE BARRED BY SOVEREIGN IMMUNITY…………………………………...…………………...5

    II.    PLAINTIFF'S CLAIMS ARE BARRED BY APPLICABLE STATUTES OF LIMITATIONS……………………………………………..…………………10

    III.   UNDER THE STANDARD FOR INDIVIDUAL LIABILITY ESTABLISHED BY THE SECOND CIRCUIT, DEFENDANTS RAGA, SLATER, FOSTER, PAPROCKI, HULL, AUSILI, LOBBAN, CRAIN, STASKO, WILLIAMS AND HIGGINS WERE NOT PERSONALLY INVOLVED IN THE ALLEGED CONSTITUTIONAL VIOLATIONS………………………………………….12

          A.    Freida Foster, Ellen O. Paprocki, Linda Hull, Frederick M. Ausili, Loran Lobban, Steven A. Crain, Mark R. Stasko, Samuel G. Williams, and Mark Higgins (the "WCB Members")….....……14

          B.    Defendant Slater………………………………………………14

          C.    Defendant Raga…………………………………………….16

    IV.   PLAINTIFF HAS FAILED TO STATE A CLAIM FOR VIOLATION OF THE BILL OF ATTAINDER CLAUSE…………………………………17

          A.    Relevant Statutes……………………………………………18

          B.    Element #1: Plaintiff does not adequately allege the specificity element…..................................................................19

          C.    Element #2: Plaintiff does not sufficiently allege the "punishment" element……………………………………………………21

              i.    Historical meaning of legislative punishment………23

i

ii.     Furtherance of nonpunitive legislative purposes……24

iii.    Legislative intent to punish…………………………25

D.    Element #3: Plaintiff cannot show "lack of judicial trial"….25

E.    NYSIF is not an appropriate defendant for a Bill of Attainder claim……………………………………………26

V.    PLAINTIFF HAS FAILED TO STATE A CLAIM FOR VIOLATION OF THE CONTRACTS CLAUSE……………………………………………..26

CONCLUSION……………………………………………………………………30

# **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*640 Broadway Renaissance Co. v. Cuomo*,
   740 F. Supp. 1023 (S.D.N.Y. 1990)......................................................................22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................13

*Bonilla v. City of N.Y.*,
   2020 U.S. Dist. LEXIS 211171 (E.D.N.Y. Nov. 12, 2020)....................................10

*Buffalo Teachers Fed'n. v. Tobe*,
   464 F.3d 362 (2d Cir. 2006)......................................................................27, 29

*Carver v. Nassau Cty. Interim Fin. Auth.*,
   2018 U.S. Dist. LEXIS 70491 (E.D.N.Y. 2018) ...................................................28

*Colon v. Coughlin*,
   58 F.3d 865 (2d Cir. 1995), abrogated by *Tangreti v. Bachmann*, 983 F.3d 609
   (2d Cir. 2020)............................................................................................13

*Communist Party of the U.S. v. Subversive Activities Control Bd.*,
   367 U.S. 1 (1961)........................................................................................20

*Consol. Edison Co. of N.Y., Inc. v. Pataki*,
   292 F.3d 338 (2d Cir. 2020)..................................................................... 21-24

*Cummings v. Missouri*,
   71 U.S. 277, (1866).....................................................................................20

*Dollinger v. N.Y. State Ins. Fund*,
   2015 U.S. Dist. LEXIS 165421 (N.D.N.Y. 2015) ...................................................6

*Donohue v. Cuomo*,
   980 F.3d 53 (2d Cir. November 6, 2020)........................................................ 27-28

*Dubin v. Cnty. of Nassau*,
   277 F. Supp. 3d 366 (E.D.N.Y. 2017) ............................................................ 20-21

*Energy Reserves Group, Inc. v. Kansas Power & Light Co.*,
   459 U.S. 400 (1983)..................................................................................27, 29

iii

*Ex parte Garland*,
 71 U.S. 333 (1866)..................................................................................................20

*Finn-Verburg v. N.Y. State Dep't of Labor*,
 122 F. Supp. 2d 329 (N.D.N.Y. 2000) ........................................................................6

*Flemming v. Nestor*,
 363 U.S. 603 (1960).................................................................................................24

*General Motors Corp. v. Romein*,
 503 U.S. 181 (1992).................................................................................................27

*Gollomp v. Spitzer*,
 568 F.3d 355 (2d Cir. 2009).....................................................................................12

*Gribbin v. N.Y. State Unified Ct. Sys.*,
 2020 U.S. Dist. LEXIS 56266 (E.D.N.Y. 2020)....................................................8-9

*Grillo v. N.Y.C. Transit Auth.*,
 291 F.3d 231 (2d Cir. 2002).....................................................................................26

*Hill v. Chalanor*,
 2009 U.S. Dist. LEXIS 126786 (N.D.N.Y. 2009) ...................................................5-6

*Holmes v. Caliber Home Loans, Inc.*,
 2017 U.S. Dist. LEXIS 119650 (S.D.N.Y. 2017) ...................................................5-6

*Kent v New York*,
 2012 U.S. Dist. LEXIS 171440 (N.D.N.Y. 2012) .....................................................8

*Kirwin v. N.Y. State Office of Mental Health*,
 665 F. Supp. 1034 (E.D.N.Y. 1987) .......................................................................5-6

*Levitant v. Workers Comp. Bd. of N.Y.*,
 2018 U.S. Dist. LEXIS 39096 (S.D.N.Y. Mar. 8, 2018) .......................................5-6

*Long Island Lighting Co. v. Cuomo*,
 666 F. Supp. 370 (N.D.N.Y. 1987).........................................................................23

*Mangiafico v. Blumenthal*,
 471 F.3d 391 (2d Cir. 2006).....................................................................................16

*Marino v. City Univ. of N.Y.*,
 18 F. Supp. 3d 320 (E.D.N.Y. 2014) ........................................................................6

iv

*Matter of Aioss v. Sardo*,
   223 A.D. 201 (3d Dep't 1928), aff'd, 249 N.Y. 270 (1928)................................................25

*Matter of Castillo v Brown*,
   151 A.D.3d 1310 (3d Dep't 2017) ........................................................................................9

*Matter of Huang Sheng Ku v. Dana Alexander, Inc.*,
   12 A.D.3d 988 (N.Y. 2004) ..................................................................................................9

*Matter of Mamaroneck Vill. Tile Distribs., Inc. v. Workers' Comp. Bd.*,
   68 A.D.3d 1423 (3d Dep't 2009) ....................................................................................18, 29

*Molina v. New York*,
   956 F. Supp. 257 (E.D.N.Y. 1995) ........................................................................................6

*Nixon v. Administrator of General Services*,
   433 U.S. 425 (1977)................................................................................... 19-20, 22, 24

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984)..................................................................................................................6

*Perry v. State Ins. Fund*,
   83 F. App'x 351 (2d Cir. 2003) ..............................................................................................6

*Pinaud v. County of Suffolk*,
   52 F.3d 1139 (2d Cir. 1995).................................................................................................10

*Plaza Motors of Brooklyn, Inc. v. Cuomo*,
   2021 U.S. Dist. LEXIS 12726 (E.D.N.Y. January 22, 2021) ...............................................28

*Selective Serv. Sys. v. Minn. Pub. Interest Research Grp.*,
   468 U.S. 841 (1984)....................................................................................................... passim

*Shenandoah v. Halbritter*,
   366 F.3d 89 (2d Cir. 2004).....................................................................................................19

*Silva v. Farrish*,
   2020 U.S. Dist. LEXIS 94517 (E.D.N.Y. 2020)......................................................................8

*Spavone v. N.Y. State Dep't of Corr. Serv.*,
   719 F.3d 127 (2d Cir. 2013)..............................................................................................12, 15

*Stone v. Pamoja House*,
   111 Fed. Appx. 624 (2d Cir. 2004).......................................................................................19

*Sullivan v. Nassau Cty. Interim Fin. Auth.*,
    959 F.3d 54 (2d Cir. 2020)................................................................................28

*Tangreti v. Bachmann*,
    983 F.3d 609 (2d Cir. 2020)............................................................................13

*United States v. Lovett*,
    328 U.S. 303 (1946)........................................................................17, 19, 25

*Will v. Mich. Dep't of State Police*,
    491 U.S. 58 (1989)............................................................................................6

*Workers' Compensation Bd. of the State of N.Y. v. Williams Auto Parts Inc.*,
    187 A.D.3d 1252 (3d Dep't 2020) ..............................................................9, 29

**FEDERAL STATUTES**

28 U.S.C.
    § 1915(e)(2)(b)(iii)........................................................................................16

42 USC
    § 1983 ................................................................................................. passim

**N.Y. STATE STATUTES**

N.Y. Court of Claims Act
    § 10(4).............................................................................................................12

N.Y. Workers' Compensation Law
    § 10.................................................................................................................29
    § 141-a [4] [a] ..................................................................................18, 24, 29
    § 23...............................................................................................................9, 18
    §§ 23, 26 and 52(5) .......................................................................................17
    § 26........................................................................................18-19, 24-25
    §§ 26, 52.........................................................................................................29
    § 50.................................................................................................................29
    § 52(1)(a)(b)...................................................................................................18
    § 52(1)(c)........................................................................................................18
    § 52(5)............................................................................................................18

**N.Y. STATE REGULATIONS**

12 NYCRR 450.1 ..........................................................................................26

## PRELIMINARY STATEMENT

In the Complaint in this matter, Plaintiff sues various Defendants, including these moving Defendants: the New York State Workers' Compensation Board ("WCB"), WCB Attorney Joseph Slater, Esq., the New York State Insurance Fund ("NYSIF"), NYSIF employee Kelsey Lynn Raga, and nine WCB Board members: Freida Foster, Ellen O. Paprocki, Linda Hull, Frederick M. Ausili, Loran Lobban, Steven A. Crain, Mark R. Stasko, Samuel G. Williams, and Mark Higgins (the "WCB Members").[1]   Slater, Raga and the WCB Members are sued "personally" i.e. in their individual capacities.

In relevant part, the Complaint (Dkt. 1) claims that the WCB imposed an initial $12,000 penalty (which was raised to $22,500) and an alleged $22,500 judgment for Plaintiff's failure to carry workers' compensation insurance for his business in Essex County, New York (Mountain Time Auctions, Antiques and Mattresses).   Plaintiff claims that the actions of the various defendants and, presumably, (unidentified) provisions of the Workers Compensation Law ("WCL") under which the penalty was brought, constitutes an unlawful Bill of Attainder, and is in violation of Article I, Section 10 of the United States Constitution, and that the WCL causes a substantial impairment of the obligation of contracts.   Plaintiff seeks a motion for preliminary injunction seeking to halt "IC-2 penalties" and seeks unspecified monetary relief.  (See, Dkt. 1, ¶¶ 47, second paragraphs numbered 41, 42, pp. 18-19).

Defendants now move to dismiss the complaint pursuant to FRCP 12(b)(5) and 12(h) for lack of jurisdiction, and 12(b)(6) for failure to state a claim.

---

1 Plaintiff also sues the New York State Attorney General Letitia James ("the AG") and Assistant Attorney General Brian Matula, but has not served these defendants.

1

For the following reasons, Defendants respectfully request that Plaintiff's Complaint be dismissed in its entirety.

## STATEMENT OF FACTS

Plaintiff's Complaint is located at the NDNY Docket at Docket #1. (Hereinafter "Dkt. 1"). It should be noted that there is a currently-pending NDNY case in the matter of *Cassidy v Madoff*, 18-cv-304 (BKS/DJS) (hereinafter "*Cassidy I*"), which appears based on similar, if not identical, factual allegations as in this case, but for allegations against attorney Defendant Slater, and (non-served) Defendants AG and Matula. The Court is referred to the Court's Amended Memorandum – Decision and Order on Defendants' motion to dismiss, located at Dkt. 67, pp. 3 – 9, in *Cassidy I* for a summary of facts alleged in that case, which also largely provide the factual background behind the WCB penalties at issue in this Complaint.

What follows is a chronological summary of the facts alleged in the Complaint:

**August 19, 2015:** Plaintiff claims that in Elizabethtown, New York, he and non-party Richard D. Harker filed a discontinuance certificate for Harker's business, Mountain Time Furniture, and a business certificate for Plaintiff's alleged "successor" business. (Dkt. 1, ¶¶ 31 – 32).

**Sept. 2015 – May 2016:** Plaintiff alleges he had been trying to have the name of the former owner of his business, Harker, removed from WC Policy 1351815-4, and his name added to the policy. (Dkt. 1, ¶ 10). Plaintiff alleges he paid Harker's workers' compensation premiums during this time. (*Id.*)

**June 2, 2016:** Defendant WCB issued a $12,000 penalty, alleging that Plaintiff carried no Workers' Compensation coverage. (Dkt. 1, ¶8, Complaint, Ex-03).

**June 23, 2016**: WC Policy 1351815-4 was cancelled (Dkt. 1, Ex-06), and no longer transferable.

(*Id.*, ¶ 11). Plaintiff alleges that for four years between June 23, 2016 and April 2020, Defendants Attorney General, NYSIF, WCB and Raga did not advise him of this.  (*Id.*)

**October 7, 2016:** Plaintiff's appeal of the $12,000 penalty was denied. (*Id.*, ¶ 9, Ex. 05).  Plaintiff claims he was unaware that NYSIF underwriter/Defendant Raga had canceled Plaintiff's WC policy 135815-4 at the instigation of Defendant Dorsett.  (*Id.)*

**February 14, 2018:** The WCB advised Plaintiff that a judgment existed against Plaintiff for $22,500.  (Dkt. 1, ¶ 12, Ex-07).

**April 2, 2018:** Plaintiff filed the *Cassidy I* lawsuit. (*Id.*; see also, Docket for NDNY 18-cv-394). An Amended Complaint in *Cassidy I* was filed on or about December 4, 2018.  (Docket for NDNY 18-cv-394, Dkt. 24).  As noted, Plaintiff's claims are based upon similar factual circumstances to those alleged in this suit (including the initial $12,000 penalty which increased to $22,500), and allegations were made under 42 USC § 1983, including violations of the Equal Protection and Procedural Due Process Clauses of the Fourteenth Amendment, and the Excessive Fines Clause. While the Complaint herein alleges that Defendants in this case are not Defendants in *Cassidy I* (Dkt. 1, ¶ 2), that case included numerous defendants identical to those in this case, including Defendants NYSIF, WCB, and individual WCB members Foster, Paprocki, Hull, Ausili, Lobban, Crain, Stasko, Williams, and Higgins (the "Common Defendants").

**May 4, 2018:** Plaintiff alleges that the Defendant AG invoked a *Rooker-Feldman* defense in response to *Cassidy I.*  (Dkt. 1, ¶ 13).[2]  Plaintiff claims he "labored" under the assumption that this defense was correct.  (*Id.*, ¶ 14).

---

2 A *Rooker-Feldman* defense was asserted in Defendants' initial motion to dismiss in *Cassidy I.* (See, Docket for 18-cv-394, Dkt. 13).  The Court declined to dismiss the case on that ground by order dated November 5, 2018.  (*Id.*, Dkt. 23, p. 12 of 29).

3

**June 28, 2019:** Following the filing of Plaintiff's Amended Complaint in *Cassidy I* (Docket for 18-cv-394, Dkt. 24), a motion to dismiss the Amended Complaint was filed by Defendant AAG Matula on behalf of the State Defendants in that case, including the "Common Defendants". (*Id.,* Dkt. 47). Plaintiff alleges in this case that Defendant Slater submitted an affirmation under oath that a judgment dated 3/30/2018 had been filed against Plaintiff, and that the *Cassidy v Madoff, et al.* action should be dismissed. (Dkt. 1, ¶ 15).

**July 16, 2019:** Plaintiff alleges that he obtained from the Essex County Clerk a notarized letter which indicated that no liens or judgments had been filed against Plaintiff or his business. (Dkt. 1, ¶ 16, Exs-08 & 09). Plaintiff alleges that the papers submitted by the AAG and Defendant Slater were "false", because there was no March 30, 2018 judgment, and thus the *Rooker-Feldman* defense (which was invoked in the motion to dismiss the amended complaint in *Cassidy I*) was inapplicable. (*Id.*, ¶¶ 17 – 18).

**February 4, 2020**: By order dated 1/23/2020 (18-cv-394, Dkt. 64) and amended order dated 2/4/2020 (18-cv-394, Dkt. 67), Judge Sannes in *Cassidy I* issued a decision and order on the Defendants' motion to dismiss. Judge Sannes dismissed all claims against Defendants NYSIF, WCB, and WCB Penalty Review Unit, Foster, Paprocki, Higgins, Lobban, Williams, Hull, Ausili, Crain, and Stasko and allowed Plaintiff to add as Defendants three "Doe" WCB panel members, in their individual capacities. In other words, all claims against the Common Defendants in this case were dismissed in *Cassidy I.*

**June 22, 2020**: Plaintiff moved in *Cassidy I* (18-cv-394) to have joined as parties Defendants WCB, NYSIF, Kelsey Raga, Darlene Dorsett, Nancy Goard, Danielle Crowley and WCB Attorney

Joseph Slater. *See Cassidy I* (18-cv-394), Dkt. 82. Plaintiff attempted to claim, among other things, that Defendant Raga conspired with Defendant Dorsett to cancel Mr. Harker's insurance policy, that Attorney Slater provided the Court with inaccurate information and again attempted to join Defendants WCB and NYSIF. *See* Dkt 82. On November 30, 2020, the Court refused to allow Plaintiff to join the WCB and NYSIF since Judge Sannes previously held the claims against the WCB and NYSIF were barred on the grounds of sovereign immunity. *See* Dkt 94 at 5-6. The Court further refused to allow the joinder of Attorney Slater since the claims were premised on conduct unrelated to the remainder of claims asserted in the Complaint. *See* Dkt 94 at 9-11.

**July 29, 2021***:* Defendants in *Cassidy I* (18-cv-394) filed a Motion for Summary Judgment seeking judgment on all claims and dismissal of the action. The motion is fully submitted.

For the reasons set forth below, the Complaint in this matter should be dismissed.

<u>**ARGUMENT**</u>

I.   **THE COMPLAINT AGAINST DEFENDANTS NEW YORK WORKERS' COMPENSATION BOARD AND NYSIF SHOULD BE DISMISSED, AS THE CLAIMS AGAINST THESE STATE AGENCIES ARE BARRED BY SOVEREIGN IMMUNITY.**

The Eleventh Amendment bars claims against a state, its agencies and officers acting on behalf of the state in federal courts. *Hill v. Chalanor*, No. 9:06-CV-0438 (GTS/GHL), 2009 U.S. Dist. LEXIS 126786 at *34 (N.D.N.Y. 2009); *Levitant v. Workers Comp. Bd. of N.Y.*, 2018 U.S. Dist. LEXIS 39096 at *11-12 (S.D.N.Y. Mar. 8, 2018); *Kirwin v. N.Y. State Office of Mental Health*, 665 F. Supp. 1034, 1037 (E.D.N.Y. 1987).  Claims brought against employees of the state in their official capacities are deemed to be claims against the state itself – and are also barred in federal court. *Holmes v. Caliber Home Loans, Inc.,* No. 16-CV-3344 (KMK), 2017 U.S. Dist. LEXIS 119650, at *14 (S.D.N.Y. 2017).

Unless a state has consented to suit, has statutorily waived its immunity, or unless Congress has abrogated a state's immunity in the enactment of a federal law, claims asserted against a state are barred in federal court. *Id.*; *Hill v. Chalanor*, No. 9:06-CV-0438 (GTS/GHL), 2009 U.S. Dist. LEXIS 126786 at *34 (N.D.N.Y. 2009); *Levitant,* 2018 U.S. Dist. LEXIS 39096 at *11-12; *Marino v. City Univ. of N.Y.*, 18 F. Supp. 3d 320, 328 (E.D.N.Y. 2014) ("This jurisdictional bar applies regardless of the nature of the relief sought."); *Kirwin*, 665 F. Supp. at 1037; *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Congress has not abrogated the states' immunity with regard to the type of claims brought by the Plaintiff. *See Molina v. New York*, 956 F. Supp. 257, 260 (E.D.N.Y. 1995) (dismissing RICO claim against state on ground of sovereign immunity); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67 (1989) ("We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent."); *Marino v. City Univ. of N.Y.*, 18 F. Supp. 3d 320, 328 (E.D.N.Y. 2014) (barring claims on ground of sovereign immunity brought pursuant to Fifth and Fourteenth Amendments); *Finn-Verburg v. N.Y. State Dep't of Labor*, 122 F. Supp. 2d 329, 335 (N.D.N.Y. 2000) (New York common law claims barred by sovereign immunity).

WCB is an entity which has previously been held to be state "agencies" or "entities" entitled to the application of sovereign immunity. *See Levitant*, 2018 U.S. Dist. LEXIS 39096 at *11-12 (citing to a collection of cases wherein WCB found to be a state agency entitled to the application of sovereign immunity). The same is true for NYSIF. *Perry v. State Ins. Fund*, 83 F. App'x 351, 353 (2d Cir. 2003) (holding NYSIF is a "state agency" that is entitled to the application of sovereign immunity); *Dollinger v. N.Y. State Ins. Fund*, 2015 U.S. Dist. LEXIS 165421 at *9 (N.D.N.Y. 2015) (relying upon *Perry v. State Ins. Fund* in concluding NYSIF is a state entity

6

entitled to sovereign immunity.)

As such, all claims against NYSIF, WCB, and the WCB members or employees of NYSIF or WCB in their official capacities, should be dismissed.

As Judge Sannes held in *Cassidy I* as it pertains to these very same defendants, and equally applicable here: "Plaintiff's causes of action against the State Defendants should be dismissed. The Plaintiff cannot bring claims against the State of New York, its agencies and its officials acting in their official capacity in federal court unless there is a clear indication by New York State or Congress that the State's immunity has been waived or abrogated. There is nothing in Plaintiff's … Complaint to suggest that any of his claims present an exception to the application of sovereign immunity, and as such, Plaintiff's claims against the State Defendants should be dismissed in their entirety." (Docket for 18-cv-394, Dkt. 47-1, p. 5 of 28; Dkt. 67, p. 14 of 35).

Further, any exception for future violations is not applicable. While plaintiff seeks a preliminary injunction barring collection activities (Dkt. 1, ¶ 47), the ultimate relief he seeks is related to an alleged bill of attainder and contracts clause violation related to the original imposition of the penalties. Plaintiff does not have any claims for violation of federal law independent of his challenge to the prior WCB decision to impose penalties upon Plaintiff for noncompliance with the WCL. Plaintiff argues that the imposition of the penalties should be declared null and void because, he claims, the imposition violated his constitutional rights.

Whether or not the relief sought by Plaintiff is "properly characterized as prospective" is not dependent on how the claim is framed in the pleading, but involves an assessment of the substance of the claim to determine whether or not plaintiff's action truly contemplates an effort

to challenge ongoing and future violations of federal law. *See Silva v. Farrish*, 2020 U.S. Dist. LEXIS 94517, at \*14 (E.D.N.Y. 2020).

In *Gribbin v. N.Y. State Unified Court System*, the Eastern District rejected Plaintiff's characterization of his claim as an effort to redress ongoing or continuing violations of federal law. *See Gribbin v. N.Y. State Unified Ct. Sys.*, 2020 U.S. Dist. LEXIS 56266, at \*17-19 (E.D.N.Y. 2020). The plaintiff in *Gribbin* sought to have the court declare the defendants' past actions illegal and sought for the court to enjoin defendants from continuing their illegal actions. *Id.* In analyzing the plaintiff's claim, the Court determined that plaintiff was improperly seeking to invalidate a prior act of the defendants and that the injunction sought was merely an effort to eliminate the natural consequences of that past act. *Id.* The Court reiterated that a declaration seeking that past actions be determined to be illegal was barred by sovereign immunity and that efforts to curtail the natural consequences of that prior act did not constitute an exception to the sovereign immunity bar. *See Gribbin* at \*17-19; *see also Kent v New York*, 2012 U.S. Dist. LEXIS 171440, at \*23-24 (N.D.N.Y. 2012) (dismissing claims seeking declaration that state actors violated federal law in the past).

In its analysis in *Gibbon*, the Court cited to the Second Circuit's decision in *National Railroad Passenger Corp. v. McDonald* and quoted a passage concerning its immunity analysis in the context of a state taking:

> The taking [*i.e.*, the alleged violation of plaintiff's due process rights by the state court,] has ongoing *effects*, to be sure, but a discrete act transferred record title from [plaintiff] to the [state]. Any use of the property by the state, its present record owner, is simply a by-product of the taking itself. To characterize this as "prospective" relief would permit [plaintiff] to challenge the state's taking at any point in the future—even decades after the appropriation—and surmount the Eleventh Amendment bar. However, any such holding would obliterate the bar on retrospective relief created by the *Ex parte Young* doctrine and render a state liable for *past* violations of federal law, which is constitutionally impossible.

*See Gribbin* at *17-19 (quoting *National Railroad Passenger Corp. v. McDonald*, 978 F. Supp. 2d 215, 231-32 (S.D.N.Y. 2013), *aff'd*, 779 F.3d 97 (2d Cir. 2015)).

Here, as in *Gribbin* and *National Railroad*, the Plaintiff is attacking a discrete act – the imposition of penalties by the WCB in connection with his non-compliance with the WCL. Plaintiff is claiming that the past imposition of penalties and past procedures utilized were unconstitutional. Plaintiff claims that the past imposition was in violation of the bill of attainder and Contract clauses of the Constitution.

Plaintiff does not allege any independent ongoing federal violation – he is alleging that collection should be barred because the penalty that was previously imposed was unconstitutional. This type of claim is not properly characterized as one to remedy ongoing and future violations of federal law and as such, is barred by sovereign immunity.[3]

---

3 Plaintiff's effort to have this Court review the past action of the WCB in assessing the penalties against him should be rejected on the additional grounds that Plaintiff failed to exhaust his administrative remedies, that the WCB and New York's Appellate Division-Third Department have exclusive jurisdiction over challenges to the determinations of the WCB, and that any challenge was required to have been brought within the time frames set out in the WCL. See WCL § 23.

New York's WCL provides that the WCB and the New York Supreme Court's Appellate Division – Third Department has exclusive jurisdiction over challenges to the determinations of the WCB, including coverage determinations and penalty assessments. See WCL § 23. As indicated by the Third Department, the legislative determination to vest the Third Department with exclusive jurisdiction was undertaken "to help ensure statewide uniformity in the application of the statute." *See Workers' Compensation Bd. of the State of N.Y. v. Williams Auto Parts Inc.*, 187 A.D.3d 1252, 1252-1255 (3d Dep't 2020).

Further, the Third Department has recognized that the WCL provides for challenges to be raised in the first instance to the WCB and that the WCB must be given an opportunity to review the challenge before an appeal to the Third Department is proper. *See Matter of Castillo v Brown*, 151 AD3d 1310, 1311 (3d Dep't 2017). Issues, including questions pertaining to the constitutionality of the WCL, must be raised before the WCB in order to preserve review by the Third Department. *See id.* ("We further note that, insofar as the employers failed to raise their challenge to the constitutionality of the statute before the Board, this claim has not been preserved

## II.    PLAINTIFF'S CLAIMS ARE BARRED BY APPLICABLE STATUTES OF LIMITATIONS.

Plaintiff has asserted 42 U.S.C. §1983 claims which appear to allege that enforcement provisions of the WCL under which the penalty was brought, constitutes an unlawful Bill of Attainder (see, Dkt. 1, ¶¶ 19 – 28), and is in violation of Article I, Section 10 of the United States Constitution, in that the WCL causes a substantial impairment of the obligation of contracts.  (*Id.*, ¶¶ 29 – 40).

Plaintiff's §1983 claims should be dismissed as untimely.   The applicable statute of limitations for a 42 U.S.C. § 1983 action arising in New York is three years. *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995) (citing *Owens v. Okure*, 488 U.S. 235, 250-51 (1989)). Under federal law, a cause of action accrues "when the plaintiff knows or has a reason to know of the harm or injury that is the basis of the action." *M.D. Southington Bd. Educ.*, 334 F.3d 217, 221 (2d Cir. 2003) (quoting Leon v. Murphy, 988 F.2d 303, 309 (2d Cir. 1993)).

With respect to Plaintiff's "Bills of Attainder" claims, Plaintiff claims as damages the initial $12,000 penalty which increased to $22,500.  (Dkt. 1, ¶¶ 21 – 22).   Plaintiff was aware of the initial $12,000 penalty nearly 5 years before he filed this Complaint, and alleges he was advised of the penalty on June 2, 2016. (Dkt. 1, Ex-03).   The Complaint was filed on May 6, 2021 (Dkt. 1), 4 years, 11 months and 4 days after Plaintiff became aware of the penalty.   This suit is untimely.

To the extent that Plaintiff claims that WCB, via the IC-2 system, levied a judgment on him on or about November 14, 2019 (see Dkt. 1, ¶ 28), and that this cures the statute of limitations

---

for our review."); *see Matter of Huang Sheng Ku v. Dana Alexander, Inc.*, 12 A.D.3d 988, 989 (N.Y. 2004).

In the case at bar, Plaintiff does not allege he took these steps.

issues, this argument should be rejected.  The Court should take judicial notice that in *Cassidy I*, the Plaintiff raised the issue of the November 2019 judgment in a motion for preliminary injunction, and counsel for Defendants in that case advised that the judgment had been taken in error, and was vacated by WCB on or about December 6, 2019.  (Docket for 18-cv-394, Dkt.62, 62-1).  Thus, Plaintiff cannot rely upon a vacated judgment in November-December 2019 to extend the statute of limitations in this case.

Plaintiff's claims regarding alleged violation of Article I, Section 10 of the United States Constitution, and his claim that Defendant Raga caused substantial impairment of the obligation of contracts, is also untimely.  (*Id.*, ¶¶ 29 – 40).  Any such constitutional claims are brought under §1983 and are subject to the 3-year statute of limitations discussed above.  Plaintiff's claims that Defendant Raga impaired his rights under a contract (presumably, with Harker) allege events which occurred in 2015 and 2016 (Dkt. 1, ¶¶ 31 – 39), beyond the 3-year statute of limitations for a § 1983 case.

Although Plaintiff claims he did not know that a WC policy issued to Harker was cancelled until April 2020, when he received discovery in the *Cassidy I* matter (*id.,* ¶¶ 35, 44), his own exhibits make clear he was aware of the $12,000 penalty over 5 years ago or on or about June 2, 2016.[4] (Dkt. 1, Ex-03).  Again, the applicable limitations period has expired.

In his Complaint, Plaintiff also urges that the 6-year statute of limitations applied by N.Y. C.P.L.R. 213(2) should apply to his constitutional impairment of contracts claim. It should not. Plaintiff's Complaint does not claim that Raga (nor any other defendant) had a contractual

---

4 The 'Notice of Penalty' specifically states that "the Board has no record of coverage for the period 09/30/2015 to present", which eviscerates Plaintiff's claim that he thought he was insured until April 2020.

relationship with him, nor breached any such contract.

However, even assuming *arguendo* that a liberal reading of the Complaint could detect a breach of contract claim, such a claim is barred by the statute of limitations. Plaintiff's claims against State entities for breach of contract are subject to New York's Court of Claims Act which requires that these claims be brought in New York's Court of Claims (see, *Gollomp v. Spitzer*, 568 F.3d 355, 358 n. 2 (2d Cir. 2009)), requires the litigant satisfy pre-suit notice requirements, and provides for an abbreviated limitations period. *See* Court of Claims Act, §10(4) (claims for implied or express breach of contract and all other claims to be noticed within six months; action to be commenced in the Court of Claims within 2 years).   Thus, should the Court read Plaintiff's Complaint as pleading a breach of contract claim, it is both untimely, and brought in the wrong forum.

### III.   UNDER THE STANDARD FOR INDIVIDUAL LIABILITY ESTABLISHED BY THE SECOND CIRCUIT, DEFENDANTS RAGA, SLATER, FOSTER, PAPROCKI, HULL, AUSILI, LOBBAN, CRAIN, STASKO, WILLIAMS AND HIGGINS WERE NOT PERSONALLY INVOLVED IN THE ALLEGED CONSTITUTIONAL VIOLATIONS.

To state a claim under 42 U.S.C. section 1983, a plaintiff must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (internal quotation marks omitted). A defendant may not be held liable under section 1983 solely because that defendant employs or supervises a person who violated the plaintiff's rights. See *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government

officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior").

Before *Ashcroft v. Iqbal*, *supra*, the Second Circuit held that supervisory personnel may be considered "personally involved" only if they (1) directly participated in the alleged constitutional violation; (2) failed to remedy that violation after learning of it through a report or appeal; (3) created, or allowed to continue, a policy or custom under which the violation occurred; (4) had been grossly negligent in managing subordinates who caused the violation; or (5) exhibited deliberate indifference to the rights of (plaintiff) by failing to act on information indicating that the violation was occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995), abrogated by *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).

In *Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020), the Second Circuit addressed how the Supreme Court's decision in *Iqbal* affected the standards in *Colon* for establishing supervisory liability. Consistent with other circuits, the Second Circuit concluded that "there is no special rule for supervisory liability" and held that a "plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, had violated the Constitution.'" *Id.* at 618. In other words, a plaintiff was required to allege that the defendant violated the Eighth Amendment by his or her "own conduct, not by reason of [his or her] supervision of others who committed the violation" and could not "rely on a separate test of liability specific to supervisors." *Id.* at 619 (citations omitted).

A.      **Freida Foster, Ellen O. Paprocki, Linda Hull, Frederick M. Ausili, Loran Lobban, Steven A. Crain, Mark R. Stasko, Samuel G. Williams, and Mark Higgins (the "WCB Members"):**

Plaintiff names the nine WCB members in this suit.   Despite their appearance in the caption, he makes not a single factual allegation as against any of them individually and does not claim that any of these defendants were personally involved in purported Constitutional violations. (See generally, Dkt. 1).

Judge Sannes in *Cassidy I* dismissed claims against these same WCB member defendants, based upon a similar failure on the part of plaintiff to allege any personal involvement in the alleged penalties:

> "There is nothing in the Amended Complaint or attached documents that indicates that all WCB members were involved in the imposition of the penalties or addressed Plaintiff's request for review. Nor is there anything before the Court that indicates that any of the named WCB members, in particular, were involved. Thus, there are insufficient facts to hold all of these individuals responsible."  (*Cassidy I*, Dkt. 67, pp. 25-26).

As in *Cassidy I*, the Plaintiff has not alleged that any of individual WCB members named in his Complaint were personally involved in anything.   As such, claims asserted against these defendants in their individual capacity pursuant to 42 U.S.C. §1983 should be dismissed in their entirety.

B.  **Defendant Slater**

Plaintiff alleges that, in support of a motion to dismiss by Defendants in *Cassidy I*, on or about June 28, 2019 Defendant Slater submitted an affirmation under oath that a judgment dated 3/30/2018 had been filed against Plaintiff, and that the *Cassidy I* action should be dismissed.  (Dkt. 1, ¶ 15).  Plaintiff alleges that he obtained from the Essex County Clerk a notarized letter which

indicated that no liens or judgments had been filed against Plaintiff or his business.  (Dkt. 1, ¶ 16, Exs-08 & 09).  Plaintiff alleges that the Slater affirmation was "false", because there was no March 30, 2018 judgment, and thus the *Rooker-Feldman* defense (which was invoked in the motion to dismiss the amended complaint in *Cassidy I*) was inapplicable.  (*Id.*, ¶¶ 17 – 18).

**Plaintiff cannot show Slater's "personal involvement":** As noted above, it is incumbent on Plaintiff to allege facts showing an individual defendant's direct and personal involvement in the alleged constitutional deprivation. *Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d at 135.

Here, the constitutional violations alleged are that the penalties invoked and (presumably) WCL provisions relied upon were an unlawful Bill of Attainder, and in violation of Article I, Section 10 of the United States Constitution, and that the WCL causes a substantial impairment of the obligation of contracts.  (*See*, Dkt. 1).  Plaintiff makes no allegation that WCB Attorney Slater was involved in imposing the penalties, nor impaired any contract.  Rather, plaintiff alleges that Slater submitted an affirmation that was factually inaccurate, in the context of a motion to dismiss. (Dkt. 1, ¶¶ 15 – 18).  It is undisputed that Slater submitted the affirmation (*Cassidy I*, Dkt. 47-3), it is also undisputed that Slater submitted a second affidavit that corrected the factual error (*id.*, Dkt. 55-1), and that the Court ultimately disregarded Slater's affidavits (*id.*, Dkt. 67, pp. 12-13). As such, the affirmations submitted by Slater had no bearing on the *Cassidy I* action whatsoever, or any motion to dismiss, and necessarily could not have caused any constitutional violation on either of the theories advanced by plaintiff in the instant action.[5]

---

[5] Moreover, to the extent that Plaintiff alleges that the Slater affirmation caused Plaintiff to labor under the assumption that a *Rooker-Feldman* defense would "destroy" his lawsuit in *Cassidy I*, it is undisputed that Judge Sannes held that defense to be inapplicable to Plaintiff's claims in November 2018, before Slater's affirmations had ever been submitted.  (See, docket in *Cassidy I*, Dkt. 23, pp. 10-12 of 29).

**Slater is entitled to absolute immunity:** In addition, Defendant Slater, who Plaintiff describes in the Complaint as a government attorney who works for the WCB (Dkt. 1, ¶¶ 12 – 18), must be dismissed because this Defendant is immune from any liability arising from his conduct during the proceedings. See *Mangiafico v. Blumenthal*, 471 F.3d 391, 396 (2d Cir. 2006) ("As a general principle, a government attorney is entitled to absolute immunity when functioning as an advocate of the [government] in a way that is intimately associated with the judicial process.") (citing *Imbler v. Pachtman*, 424 U.S. 409, 430). This doctrine of absolute immunity for government attorneys covers "the functions of a government attorney 'that can fairly be characterized as closely associated with the conduct of litigation or potential litigation' in civil suits—including the defense of such actions." *Id*. (quoting *Barrett v. United States*, 798 F.2d 565, 572 (2d Cir. 1986)).[6]

Here, Plaintiff's claims against Slater are based on actions within the scope of his official duties and associated with the judicial process and conduct of Plaintiff's *Cassidy I* litigation. Therefore, these claims are dismissed because they seek monetary relief against a defendant who is immune from suit. *See* 28 U.S.C. § 1915(e)(2)(b)(iii).

As such, any claims asserted against Defendant Slater in his individual capacity pursuant to 42 U.S.C. §1983 should be dismissed.

### C. Defendant Raga

Plaintiff's claims against Defendant Raga appear to focus on a violation of the Contracts Clause of the U.S. Constitution.  (Dkt. 1, ¶ 29, *see generally* ¶¶ 29 – 41).  The Contracts Clause of

---

6 The same basis for dismissal would be applicable to Defendant AAG Matula, had he been properly served.

the United States Constitution provides that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts[.]"   U.S. Const., art. I, § 10, cl. 1.   As discussed more fully below in **POINT V.**, below, a Contracts Clause claim focuses on a State law, and its effects on an injured party or class of persons.   Defendant Raga, a NYSIF employee, did not promulgate the New York State WCL provisions under which Plaintiff claims penalties were incurred against him.   As such, Plaintiff has not plead under *Tangreti* that Government-official defendant Raga, through her own individual actions, had violated the Constitutional provision allegedly violated, here the Contracts Clause.

### IV.   PLAINTIFF HAS FAILED TO STATE A CLAIM FOR VIOLATION OF THE BILL OF ATTAINDER CLAUSE.

Plaintiff's Complaint alleges violation of the Bill of Attainder Clause.   (Dkt. 1, ¶¶ 19 – 28). Plaintiff alleges that the responsible defendant was Defendant WCB.   (*Id.*, ¶ 22).   Plaintiff appears to allege that statutory penalties imposed by WCL §§ 23, 26 and 52(5) amount to unlawful bills of attainder.   (*Id.*, ¶¶ 23).

Article I, Section 10, Clause 1 of the United States Constitution states, in relevant part, "No State shall . . . pass any Bill of Attainder . . . ." U.S. Const. art. I, § 10, cl. 1.   "A bill of attainder is a legislative act which inflicts punishment without a judicial trial." *United States v. Lovett*, 328 U.S. 303, 315 (1946) (quoting *Cummings v. Missouri*, 71 U.S. 277, 18 L. Ed. 356 (1866)). The Supreme Court has articulated three elements of a bill of attainder: (1) "specification of the affected persons," (2) "punishment," and (3) "lack of a judicial trial." *Selective Serv. Sys. v. Minn. Pub. Interest Research Grp.*, 468 U.S. 841, 846-47 (1984).

As a first matter, the individual defendants in this case Slater, Raga, Foster, Paprocki, Hull, Ausili, Lobban, Crain, Stasko, Williams, and Higgins, are not the "State" and cannot be held liable

for passing any Bill of Attainder.  As such, this cause of action should be dismissed as against these defendants in the first instance.

### A.  Relevant Statutes

New York's Legislature has made clear that an employer's failure to carry Workers' Compensation insurance constitutes "an immediate serious danger to public health, safety or welfare." *See* WCL § 141-a [4] [a]; *Matter of Mamaroneck Vill. Tile Distribs., Inc. v. Workers' Comp. Bd.*, 68 A.D.3d 1423, 1424 (3d Dept. 2009).  Section 52 of the WCL not only provides for significant civil penalties associated with the employer's failure to carry insurance (*see* WCL §52(5)), but also provides both personal liability for officers of corporations which fail to obtain workers' compensation coverage for their employees (*see* WCL §52(1)(c)) and even criminal liability for not procuring workers' compensation insurance (*see* WCL §52(1)(a)(b)).

When the Board determines that an employer has failed to procure insurance, it notifies the employer of the penalty.  The employer then has 30 days to request a redetermination of the penalties.  *See* WCL §52(5).  Once the Board's determination is issued, the employer then has thirty days to appeal this decision to New York's Appellate Division – Third Department.  *See* WCL §23.  The Third Department has exclusive jurisdiction to hear any challenge to an award or decision of the WCB.  *See* WCL §23.  In the event that the employer wishes to challenge the determination of the Third Department, the employer may then apply to New York's Court of Appeals for further review in accordance with New York law.  *See* WCL §23.

If the employer fails to challenge the Board's determination, or where the Board's determination is affirmed by the Court, the WCL empowers the Board to convert the penalties into a judgment pursuant to WCL §26, which provides in relevant part:

> ". . . in case of failure by an employer, within twenty days after it is due, to pay an assessment imposed by the chairman pursuant to subdivision five of section fifty-two of this chapter, the chairman in any such case or on the chairman's consent any party to an award may file with the county clerk for the county in which the injury occurred or the county in which the employer has his principal place of business, (1) a certified copy of the decision of the workmen's compensation board awarding compensation or ending, diminishing or increasing compensation previously awarded, from which no appeal has been taken within the time allowed therefor, or if an appeal has been taken by an employer who has not complied with the provisions of section fifty hereof, where he fails to deposit with the chairman the amount of the award as security for its payment within ten days after the same is due and payable, or (2) a certified copy of the demand for deposit of security, or (3) a certified copy of the chairman's order imposing, and the demand for payment of, such assessment, and thereupon judgment must be entered in the supreme court by the clerk of such county in conformity therewith immediately upon such filing."

*See* WCL §26 (emphasis added).  Once the judgment is entered, it has "the same effect and [is] subject to the same proceedings as though rendered in a suit duly heard and determined by the supreme court, except that no appeal may be taken therefrom." *Id.* (emphasis added).

## B.  Element #1: Plaintiff does not adequately allege the specificity element:

The Supreme Court has held that for a legislative act to be a bill of attainder, it must "apply either to named individuals or to easily ascertainable members of a group . . . ." *Lovett*, 328 U.S. at 315; *Stone v. Pamoja House*, 111 Fed. Appx. 624, 626 (2d Cir. 2004) ("Stone's [bill of attainder] arguments are without merit . . .  Stone does not specify any legislation directed at him, and thus cannot show a bill of attainder"); *Shenandoah v. Halbritter*, 366 F.3d 89, 92 (2d Cir. 2004) ("A bill of attainder is 'a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without . . . the protections of a judicial trial'). However, the Supreme Court cautioned in *Nixon v. Administrator of General Services*, 433 U.S. 425, 468 (1977) that "the Constitution is [not] offended whenever a law imposes undesired consequences on an individual or on a class that is not defined at a proper level of generality." 433 U.S. at 469-70. This is because

finding that "an individual or defined group is attainted whenever he or it is compelled to bear burdens which the individual or group dislikes" would "remove … the anchor that ties the bill of attainder guarantee to realistic conceptions of classification and punishment" and "cripple the very process of legislating, for any individual or group that is made the subject of adverse legislation can complain that the lawmakers could and should have defined the relevant affected class at a greater level of generality." *Id.* at 470 (footnote omitted).

Further, the Supreme Court has held that a law distinguishes a class of people for bill of attainder purposes when it speaks "in terms of conduct which, because it is past conduct, operates only as a designation of particular persons." *Communist Party of the U.S. v. Subversive Activities Control Bd.*, 367 U.S. 1, 86 (1961); see also *Cummings*, 71 U.S. at 317-18 (holding that law was a bill of attainder because, inter alia, it singled out individuals for past involvement in the Confederacy); *Ex parte Garland*, 71 U.S. 333, 377-78 (1866) (same). "In contrast, the Court has upheld laws with a prospective enforcement application even if they designate a particular group of individuals for possible sanction." *Dubin v. Cnty. of Nassau*, 277 F. Supp. 3d 366, 386 – 387 (E.D.N.Y. 2017).

> "For instance, *Communist Party* held that the Subversive Activities Act was not a bill of a attainder because it "require[d] the registration only of organizations which, after the date of the Act, [were] found to be under the direction, domination, or control of certain foreign powers and to operate primarily to advance certain objectives," and thus, "[p]resent activity constitute[d] an operative element to which the statute attache[d] legal consequences, not merely a point of reference for the ascertainment of particular persons ineluctably designated by the legislature." 367 U.S. at 86-87; see also id. at 87 (holding that "[f]ar from attaching to the past and ineradicable actions of an organization," the Act's application was "made to turn upon continuing contemporaneous fact"). Likewise, in *Selective Service System*, the Supreme Court found that a federal statute was not sufficiently specific and, therefore, not a bill of attainder because it did not target a group based on their prior behavior, but instead penalized present and future violations of that law. 468 U.S. at 847-51; see also id. at 850-51 & n.7 ("Because it allows late registration, § 12(f) is clearly distinguishable from the provisions struck down in Cummings and Garland. Cummings

and Garland dealt with absolute barriers to entry into certain professions for those who could not file the required loyalty oaths; no one who had served the Confederacy could possibly comply, for his status was irreversible.").

Conversely, the Second Circuit found in *Consolidated Edison* that a New York State law imposing a utility sanction for prior wrongdoing was an unconstitutional bill of attainder because of its "retrospective focus." *Consol. Edison Co. of N.Y., Inc. v. Pataki*, 292 F.3d 338, 349 (2d Cir. 2020). It emphasized that "defin[ing] past conduct as wrongdoing and then impos[ing] punishment on that past conduct" is an "indispensable [sic] element of a bill of attainder" because "[s]uch a bill attributes guilt to the party or parties singled out in the legislation." *Id.* (citing, inter alia, *Nixon*, 433 U.S. at 472-73; *Cummings*, 71 U.S. at 325). Accordingly, the Second Circuit held that "[t]he retrospective focus of Chapter 190 [was] essential to [its] determination that the statute is a bill of attainder. The power of legislatures to enact purely prospective changes to utility rates, even to the rates of a single utility, is considerably broader than their authority to act retrospectively." *Id.*

*Dubin v. Cnty. of Nassau*, 277 F. Supp. 3d at 386-87.

Here, Plaintiff fails to plead the specificity element of a cause of action for violation of the Bill of Attainder Clause.  The statute in question, WCL §52 only identifies "employers", and is not applicable upon any identifiable individual. It applies equally to all businesses operating with employees in the State.

Also, Plaintiff has identified no "retrospective focus" of the penalty provisions of the WCL.  The Plaintiff does not claim he was retroactively penalized for past failure to carry workers' compensation insurance when the WCL provisions in question were enacted.  Plaintiff alleges that he purchased the business in question from Harker in August 2015.  (Dkt. 1, ¶ 31).  There is no dispute that WCL § 52 had been enacted before that date.  The statute does did not impose penalties for past conduct that preceded the enactment of the relevant provisions of the WCL.  Plaintiff failed to sufficiently allege the specificity element of a claim under the Bill of Attainder Clause.

## C.  Element #2: Plaintiff does not sufficiently allege the "punishment" element.

To invalidate legislation as a bill of attainder, the Bill of Attainder Clause "requires not

21

merely 'singling out' but also punishment." *Consol. Edison Co. of N.Y., Inc. v. Pataki*, 292 F.3d at 349.

The Supreme Court articulated three factors to guide a court's determination of whether a statute directed at a named or readily identifiable party is punitive: "(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, 'viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes'; and (3) whether the legislative record 'evinces a [legislative] intent to punish.'" *Selective Serv. Sys.*, 468 U.S. at 852 (quoting *Nixon*, 433 U.S. at 473, 475-76, 478). *Nixon* makes it clear that a statute need not fit all three factors to be considered a bill of attainder; rather, those factors are the evidence that is weighed together in resolving a bill of attainder claim. *Nixon*, 433 U.S. at 473-78. The party challenging the statute has the burden of "establishing that the legislature's action constituted punishment and not merely the legitimate regulation of conduct." *Id*. 433 U.S. at 476 n.40.  Nevertheless, the Supreme Court has warned that, "[h]owever expansive the prohibition against bills of attainder, it surely was not intended to serve as a variant of the equal protection doctrine, invalidating every Act of Congress or the States that legislatively burdens some persons or groups but not all other plausible individuals." *Id.*, 433 U.S. at 471. "Forbidden legislative punishment is not involved merely because the Act imposes burdensome consequences." *Id.* at 472.

In applying this test, the courts have been exceptionally mindful of the dangers of an expansive reading of the Bill of Attainder Clause and have been extremely loathe to find a challenged statute constitutes a bill of attainder. *640 Broadway Renaissance Co. v. Cuomo*, 740 F. Supp. 1023, 1034 – 1036 (S.D.N.Y. 1990).  As was stated by Chief Judge Munson of the Northern

22

District of New York in 1987:

> Of course, all modern legislation regulating the economic activities of specific groups might be considered 'punishments,' and the bill of attainder clause, if read too broadly, could be used to cripple the ability of legislatures to respond to some perceived social or economic problem by imposing restrictions or limitations on individuals, corporations, or industries which are deemed responsible for the problem. Consequently, the bill of attainder clause has been used sparingly in invalidating legislation. It has been applied only to legislation closely paralleling the historical characteristics of common law bills of attainder and bills of pains and penalties, the most important of which is a design to '[inflict][] its deprivation upon the members of a political group thought to present a threat to national security.' *United States v. Brown*, 381 U.S. 437, 453 (1965). . . . The court is aware of only four cases decided by the Supreme Court since the Civil War in which a statute was invalidated under the bill of attainder clause, and all four involved legislative sanctions against perceived 'traitors' or 'subversives'.

*Long Island Lighting Co. v. Cuomo*, 666 F. Supp. 370, 403 (N.D.N.Y. 1987) (emphasis added) (citations omitted).

**i. Historical meaning of legislative punishment:** Here, the penalties imposed by WCL § 52 do not impose the sorts of "deprivations and disabilities so disproportionately severe and so inappropriate to nonpunitive ends that they unquestionably have been held to fall within the proscription of [the Clause]." *Consol. Edison Co. of N.Y., Inc. v. Pataki*, 292 F.3d at 310, citing, *Nixon*, 433 U.S. at 473. Some types of legislatively imposed harm, in other words, are considered to be punitive per se. *Id.* "The classic example is death, but others include 'imprisonment, banishment, . . . the punitive confiscation of property [, and prohibition of] designated individuals or groups from participation in specified employments or vocations.'" *Consol. Edison Co. of N.Y., Inc. v. Pataki*, 292 F.3d at 351, citing, *Nixon*, 433 U.S. at 473-74; accord *Selective Serv. Sys.*, 468 U.S. at 852. "Punishment" will be found only where the statutory burden is ". . . so disproportionately severe and so inappropriate to nonpunitive ends . . ." that a legislative desire to punish can be discerned. *Nixon*, supra, 433 U.S. at 474. Where, on the other hand, the statutory

burdens further legitimate, nonpunitive legislative purposes, the Bill of Attainder clause is not implicated. *Selective Service System*, supra, 468 U.S. at 852.  The penalties at issue clearly do not fit into this category.

      **ii. Furtherance of nonpunitive legislative purposes**: Plaintiff cannot establish the punishment element because the penalties here reasonably can be said to further nonpunitive legislative purposes.  The second component of the Supreme Court's test on the "punitive" element is "functional", looking to:

> "whether the law under challenge, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes. . . .  Where such legitimate legislative purposes do not appear, it is reasonable to conclude that punishment of individuals disadvantaged by the enactment was the purpose of the decisionmakers."

*Consol. Edison Co. of N.Y., Inc. v. Pataki*, 292 F.3d at 351, citing, *Nixon*, 433 U.S. at 473-74; see also, *Flemming v. Nestor*, 363 U.S. 603, 615 (1960) (describing "inability to discern any alternative [nonpunitive] purpose which the statute could be thought to serve" as a basis for finding a statute to be punitive).

      Here, the legislative purpose is set forth above: New York's Legislature has made clear that an employer's failure to carry Workers' Compensation insurance constitutes "an immediate serious danger to public health, safety or welfare." *See* WCL § 141-a [4] [a].  WCL §52 does not determine Plaintiff nor anyone else to be guilty. Had Plaintiff maintained workers' compensation insurance as required by law he would never have been subject to fines under WCL § 52.

      Furthermore, the legislative history of WCL § 26 provides the reasoning for the Board's power to promptly convert penalties for failing to carry workers' compensation coverage into judgments. The bill jacket memorializing the enactment of the statute contains a letter from the

24

State Industrial Commission, the agency then responsible for enforcing the WCL. The letter noted the importance of prompt entry of WCL § 26 judgments in order to protect employees and emphasized that "if the Commission cannot take prompt steps to enter judgment and collect the amount of the award, grave injustice will result in many cases." (Bill Jacket, L. 1921, Ch. 539). The Commission specifically referred to a pending motion to vacate a WCL § 26 judgment and expressed concern that "financially irresponsible" employers would use this delaying tactic to avoid payment by disposing of their property while the litigation languished in court.

     **iii. Legislative intent to punish:** Finally, there is no indicia of punitive legislative intent. The legislative history must evince a legislative intent to punish. See *Selective Serv. Sys.*, 468 U.S. at 852 (citing *Nixon*, 433 U.S. at 478). The statutory language and legislative history of WCL § 26 support the Board's interpretation, which fosters the State's strong interest in "assur[ing] payment of any and every award to an injured employee . . . by requiring that every employer except a self-insurer shall insure and keep insured." *Matter of Aioss v. Sardo*, 223 A.D. 201, 203 (3d Dep't 1928), *aff'd*, 249 N.Y. 270 (1928).

     **D.   Element #3: Plaintiff cannot show "lack of judicial trial":**

     "A bill of attainder is a legislative act which inflicts punishment without a judicial trial." *United States v. Lovett*, 328 U.S. at 315.  Here, there were available remedies to Plaintiff as it pertained to the penalties at issue.

     As noted above in **A.**, supra, WCL provides adequate process, which affords employers an opportunity to challenge any penalties assessed, as well as procedures to appeal the results of the WCB's review to the Appellate Division, Third Department and ultimately to the New York Court of Appeals.  Plaintiff cannot establish the "lack of a judicial trial" element of a Bill of Attainder

25

Clause claim.

**E. NYSIF is not an appropriate defendant for a Bill of Attainder claim:**

NYSIF is an insurance provider empowered to issue insurance policies in the name of the State Insurance Fund.  *See* 12 NYCRR 450.1.  NYSIF is not responsible for the imposition of penalties for failure to provide insurance or any other adjudicatory function that is alleged to have caused Plaintiff harm – rather, it provides insurance policies.  Nowhere in the Plaintiff's Complaint does he allege a deprivation of any right or interest caused by NYSIF.  Even if there were an action of NYSIF which constituted a deprivation, New York law provides adequate post-deprivation relief through its Article 78 procedures.  *See* CPLR Article 78; *Grillo v. N.Y.C. Transit Auth.*, 291 F.3d 231, 234 (2d Cir. 2002) (quoting *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880-81 (2d Cir. 1996) ("An Article 78 proceeding is a perfectly adequate post-deprivation remedy.").

**V. PLAINTIFF HAS FAILED TO STATE A CLAIM FOR VIOLATION OF THE CONTRACTS CLAUSE.**

Plaintiff's second cause of action in this complaint appears to allege violation of the Contracts Clause of the U.S. Constitution.  (Dkt. 1, ¶¶ 29 – 44).  In short, plaintiff alleges that he assumed non-party Harker's "Mountain Time Antiques" business, appears to opine that he assumed Harker's existing workers' compensation policy, and that Harker's policy (1351815-4) was improperly canceled by Defendants Dorsett and Raga.  (*Id.*)

The Contracts Clause of the United States Constitution provides that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts[.]"  U.S. Const., art. I, § 10, cl. 1. To state a claim for violation of the Contract Clause, a plaintiff must allege facts demonstrating a state law's "substantial impairment of a contractual relationship." *General Motors Corp. v. Romein*, 503 U.S.

181 (1992). A state law will survive a Contracts Clause challenge if it serves "a significant and legitimate public purpose" and "the adjustment of 'the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption.'" *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411-12 (1983); see also *Buffalo Teachers Fed'n. v. Tobe*, 464 F.3d 362, 366-67 (2d Cir. 2006) ("[T]he Contracts Clause's . . . does not trump the police power of a state to protect the general welfare of its citizens, a power which is 'paramount to the rights under contracts between individuals[.]'").

To the extent that the Plaintiff's Contacts Clause claim can be read as a challenge to the penalty provisions of the New York State WCL, it should fail nonetheless.   As the Second Circuit recently noted, "[i]n evaluating claims for contractual impairment, "we first ask whether the change in state law has operated as a substantial impairment of a contractual relationship." *Donohue v. Cuomo*, 980 F.3d 53, 78 (2d Cir. November 6, 2020); citing, *General Motors Corp. v. Romein*, 503 U.S. at 186 (citations and internal quotation marks omitted). "This inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *Id.*   But "state laws that impair an obligation under a contract do not necessarily give rise to a viable Contracts Clause claim." *Id.*, citing, *Buffalo Teachers Fed. v. Tobe*, 464 F.3d at 368.   "[T]he interdiction of statutes impairing the obligations of contracts does not prevent the State from exercising such powers as are vested in it for the promotion of the common weal, or are necessary for the general good of the public." *Id.*, citing, *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 241 (1978).

Additionally, the Contracts Clause only restricts states from impairing obligations under existing contracts. *Plaza Motors of Brooklyn, Inc. v. Cuomo*, 2021 U.S. Dist. LEXIS 12726, *19-20 (E.D.N.Y. January 22, 2021), citing, *Romein*, 503 U.S. at 182; *Carver v. Nassau Cty. Interim Fin. Auth.*, 2018 U.S. Dist. LEXIS 70491, 2018 WL 1970740, at *6 (E.D.N.Y. 2018) (Seybert, J.), aff'd sub nom. *Sullivan v. Nassau Cty. Interim Fin. Auth.*, 959 F.3d 54 (2d Cir. 2020) ("It is clear, however, that the contracts clause prohibits the impairment by the state of existing contracts but does not apply to contracts created after the allegedly-offensive law was enacted.") (emphasis in original) (internal quotations omitted).

Here, Plaintiff does not allege that his August 2015 "contract" with Harker pre-dated the applicable penalty provisions of the New York State WCL, which were originally enacted as § 52 of the WCL in 1922. WCL § 52 has since been amended several times since its original enactment to impose stricter civil and criminal penalties upon employers who do not secure and maintain coverage for their employees, but even the most recent amendments pre-date the alleged "contract".. (See L.2007, c. 6, § 7, eff. April 12, 2007; L.2008, c. 139, § 10, eff. June 30, 2008; L.2013, c. 57, pt. GG, § 19, eff. March 29, 2013.) Thus, no Contracts Clause claim can be made. *Plaza Motors of Brooklyn, Inc. v. Cuomo*, supra ("Plaintiffs do not identify any contracts predating EO 202.68 that are impaired by EO 202.68. Instead, Plaintiffs allege EO 202.68 impairs their ability to "enter into contracts with customers in order to purchase or lease vehicles because no customer will conduct sales remotely if a dealership merely a couple miles away can allow them to test drive a vehicle and negotiate the price in person at the same time." Pl.'s Mem. at 19. *Because the Contracts Clause only protects existing contracts and Plaintiffs have failed to identify*

*any existing contract impaired by EO 202.68, Plaintiffs have failed to establish a likelihood of success on the merits with respect to their Contracts Clause claim*.").

Even assuming *arguendo* the complained-of state laws here substantially impaired a contractual obligation, they could not "trench impermissibly on contract rights" if the laws served a "legitimate public purpose" through means that are "reasonable and necessary." *Buffalo Teachers*, 464 F.3d at 368.  There can be no dispute that there is a legitimate public purpose to the New York WCL - New York's Legislature has made clear that an employer's failure to carry Workers' Compensation insurance constitutes "an immediate serious danger to public health, safety or welfare." *See* WCL § 141-a [4] [a]; *Matter of Mamaroneck Vill. Tile Distribs., Inc. v. Workers' Comp. Bd.*, 68 A.D.3d 1423, 1424 (3d Dept. 2009).  As such, WCL § 10 requires all employers to "secure compensation to [their] employees and pay or provide compensation for their disability or death from injury arising out of and in the course of the employment," as provided in WCL § 50. Where an employer fails to obtain the required coverage, plaintiff may impose fines, assessments, and/or other penalties on account thereof. See WCL §§ 26, 52. See also *Williams Auto Parts Inc.*, 187 A.D.3d 1252, 1252-1255 (3d Dept. 2020).

Thus, the WCL serves "a significant and legitimate public purpose" and as such "adjustment of 'the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption.'" *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411-12. Plaintiff's Contracts Clause claims should be dismissed.

<u>**CONCLUSION**</u>

For the reasons set forth herein, Plaintiff's Complaint should be dismissed in its entirety.

Dated: Albany, New York
September 30, 2021

LETITIA JAMES
Attorney General of the State of New York
Attorney for Defendant Raga, Lobban, Williams, Hull, Ausill, Stasko, Foster, Higgins, Paprocki, Slater, NYS Insurance Fund and Workers Compensation Board
The Capitol
Albany, New York  12224

By: *s/John F. Moore*
John F. Moore
Assistant Attorney General, of Counsel
Bar Roll No.   105188
Telephone:     (518) 776-2293
Fax: (518) 915-7738 (not for service of papers)
Email: john.moore@ag.ny.gov

TO:   Robert Craig Cassidy, pro se
Plaintiff pro se
43 Pleasant Street
Rutland, VT 05701

Darlene Dorsett, Defendant
E. Martin Agency Inc.
84 Montcalm Street
Suite 1
Ticonderoga, NY 12883
Pro se