UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ROBERT CRAIG CASSIDY**,**

                           Plaintiff,

v.                                                          8:21-CV-0521 (GTS/CFH)

NEW YORK STATE INSURANCE FUND;
WORKERS' COMPENSATION BOARD; LETITIA
JAMES; BRIAN W. MATULA; JOSEPH SLATER;
KELSEY LYNN RAGA; FREIDA FOSTER; ELLEN O.
PAPROCKI; LINDA HULL; FREDERICK M. AUSILI;
LORAN LOBBAN; STEVEN A. CRAIN; MARK R.
STASKO; SAMUAL G. WILLIAMS; MARK HIGGINS;
and DARLENE DORSETT,

                           Defendants.
_____

APPEARANCES:                       OF COUNSEL:

ROBERT CRAIG CASSIDY
  Plaintiff, *Pro Se*
43 Pleasant Street
Rutland, Vermont 05701

HON. LETITIA A. JAMES               JOHN F. MOORE, ESQ.
Attorney General for the State of New York   Assistant Attorney General
  Counsel for State Defendants Other than Dorsett
The Capitol
Albany, New York 12224

DARLENE DORSETT
  Defendant, *Pro Se*
E Martin Agency Inc.
84 Montcalm Street, Suite 1
Ticonderoga, New York 12883

GLENN T. SUDDABY, United States District Judge

## **DECISION and ORDER**

    Currently before the court, in this action filed *pro se* by Plaintiff Robert Craig Cassidy

("Plaintiff") against Defendants New York State Insurance Fund ("NYSIF"), New York State Worker's Compensation Board ("WCB"), Attorney General of New York Letitia James, Brian M. Matula, Joseph Slater, Kelsey Lynn Raga, Freida Foster, Ellen O. Paprocki, Linda Hull, Frederick M. Ausill, Loran Lobban, Steven A. Crain, Mark R. Stasko, Samual G. Williams, Mark Higgins, and Darlene Dorsett[1] (collectively "Defendants") pursuant to 42 U.S.C. § 1983, is Defendants' motion to dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction, insufficient service of process, and/or failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(1), (5), and (6).  (Dkt. No. 19.)  For the reasons set forth below, Defendants' motion is granted.

## I.       RELEVANT BACKGROUND

### A.       Plaintiff's Complaint[2]

Generally, in his Complaint, Plaintiff alleges as follows.  Plaintiff is a Vermont resident and owner of Mountain Time Auctions, Antiques, and Mattresses, a business located in Ticonderoga, New York.  (Dkt. No. 1, ¶¶ 3, 7, 9 ["Compl."]).  Plaintiff purchased the business in or around 2015 from the previous owner, Richard Harker ("Mr. Harker").  (*Id.*, ¶¶ 9–10.)  Mr. Harker had maintained a New York State workers' compensation policy with Defendant Darlene Dorsett ("Defendant Dorsett"), an insurance broker and owner of L. Stockton Martin Agency in Ticonderoga.  (*Id.*, ¶ 9.)  From the 2015 purchase through May 2016, Plaintiff attempted to add his own name and address to the policy and have Mr. Harker's information removed.  (*Id.*, ¶ 10.)  Throughout that time, although the policy remained in Mr. Harker's name, Plaintiff continued

---

[1]      Defendant Dorsett is acting *pro se* and has not joined in the current motion.

[2]      The Complaint is rife with coarse remarks and insults directed at Defendants.  While the Court may sympathize with the inherent frustrations that *pro se* litigants often face, such remarks are improper.  The Court cautions Plaintiff to use concise and respectful language in the future.

paying the premiums.  (*Id.*)  Unbeknownst to Plaintiff, Defendant Dorsett had cancelled Mr.

Harker's insurance policy, effective June 23, 2016.  (Compl., ¶ 11.)  On June 2, 2016, WCB

issued a $12,000.00 penalty against Plaintiff pursuant to N.Y. W.C.L. § 52(5).  (*Id.* ¶ 8; Dkt. No.

1-1, at 3.)  WCB alleged that Plaintiff failed to carry workers' compensation insurance, as

required under state law.  (Compl. ¶ 8.)  Plaintiff unsuccessfully attempted to appeal the penalty.

(*Id.*, ¶ 9.)  In or around February 2018, WCB informed Plaintiff that a $22,500.00 judgment

existed against him.  (*Id.*, ¶ 12.)

Based on these factual allegations, Plaintiff asserts two causes of action against

Defendants pursuant to 42 U.S.C. § 1983.  First, Plaintiff claims that WCB violated the U.S.

Constitution's Bill of Attainder Clause by failing to have a "judicial hearing" prior to levying the

initial $12,000.00 penalty.  (Compl., ¶ 22.)  Plaintiff alleges that "WCB took 90 days to not

consider the appeal" and that, in the interim, the penalty increased by $6,000.00.  (*Id.*)  Plaintiff

alleges that "there was no post deprivation relief" because WCB refused consideration of the

appeal while he remained "Not In Compliance."  (*Id.*)  Plaintiff alleges that he "would have to

forfeit $18,000.00 to even have his appeal considered, not by a Court but by WCB bureaucrats."

(*Id.*)  Plaintiff alleges that "statutory penalties are assigned by the legislature not a court" and

that "[t]he absence of judicial involvement is Constitutionally fatal" to the judgment against him.

(*Id.*, ¶ 23.)

In Plaintiff's second claim, he invokes the Contracts Clause of the U.S. Constitution.

(Compl. ¶ 29.)  Plaintiff claims that that the workers' compensation policy at-issue is a

"contract," and Defendants have impaired or interfered with the contract's obligations.  (*Id.*, at

30-41.)

As relief, Plaintiff requests that "the Court issue a temporary restraining order halting the

issuance of not in compliance IC-2 penalties from a Constitutionally repugnant '. . . system designed, operated, and maintained by [WCB].'" (Compl. ¶ 47.) Furthermore, Plaintiff "requests trial by jury to determine financial compensation, if any, due Plaintiff [sic] for losses inflicted upon him by Defendants." (*Id.*, at 20.) Plaintiff alleges that his "building at 105 Montcalm Street in Ticonderoga . . . has been lost to Plaintiff due to the unconstitutional actions of Defendants, and is appraised by the Town of Ticonderoga at $124,000.00." (*Id.*, ¶ 7.) Finally, Plaintiff alleges that "all in all," he had sustained damages due to Defendants' action in the range of $300,000. (*Id.*)

### B.   *Cassidy I*

On April 2, 2018, Plaintiff filed a *pro se* action in the Northern District of New York against numerous WCB and NYSIF members and employees. *Cassidy v. Rodriguez, et al.*, No. 18-CV-0394-DJS ("*Cassidy I*"). Plaintiff named several defendants who are named in this action—to wit: NYSIF, WCB, Steven Crain, Frieda Foster, Mark Higgins, Linda Hull, Loren Lobban, Ellen Paprocki, Samuel G. Williams, and Mark Stasko. (*Id.*) As he has in the current matter, Plaintiff asserted claims pursuant to 42 U.S.C. § 1983, alleging the defendants violated his constitutional rights by denying him due process and imposing excessive fines in connection with the 2016 penalty. (*Id.*) On September 30, 2021, United States Magistrate Judge Daniel J. Stewart issued a Decision and Order dismissing the case on the merits via summary judgment.[3] *Cassidy v. Rodriguez, et al.*, No. 18-CV-0394-DJS, 2022 WL 5028089 (N.D.N.Y. Sept. 30, 2021) (Stewart, M.J.), *affirmed*, 2023 WL 408944 (2d Cir. Jan. 26, 2023) (summary order).

### C.   **Parties' Briefing on Defendant's Motion**

---

[3]     Plaintiff alleges that in April 2020, during discovery in *Cassidy I*, he learned that Defendant Dorsett and/or Defendant Raga had cancelled the workers' compensation policy. (Compl. ¶¶ 9, 11.)

### 1.    Defendants' Memorandum of Law

Defendants seek dismissal of the Complaint in its entirety.  (Dkt. No. 19.)  Defendants argue that sovereign immunity bars Plaintiff's claims against WBC and NYSIF and the individual defendants in their official capacities.  (Dkt. No. 19-2, at 13–17.)  Moreover, Defendants argue that Plaintiff's claims are barred by the three-year statute of limitations.  (*Id.*, at 18–20.)  In any event, Defendants argue that they were not personally involved in the alleged constitutional violations.  (*Id.*, at 20–25.)  As to Plaintiff's Bill of Attainder claim, Defendants argue that the Complaint does not sufficiently allege the necessary "specificity" and "punishment" elements.  (*Id.*, at 25–34.)  Similarly, Defendants argue that Plaintiff cannot show "lack of judicial trial."  (*Id.*)  As to Plaintiff's Contracts Clause claim, Defendants argue that no state law "substantially impaired" an existing contractual obligation, and that, even assuming as much, a "legitimate public purpose" justifies such impairment.  (*Id.*, at 34–37.)  Finally, Defendants argue that Plaintiff has not yet served Defendants James and Matula.  (*Id.*, at 9, n.1.)

### 2.    Plaintiff's Opposition

Plaintiff's opposition mainly argues that Defendants have improperly presented matters outside the pleadings, particularly Defendants' citations to *Cassidy I*.  (Dkt. No. 24, at 2.)  Similarly, Plaintiff argues that Defendants' motion papers are procedurally deficient because they lack a Statement of Material Facts supported by record citations pursuant to Local Rule 56.1.  (*Id.*, at 2–4.)  Plaintiff argues that Defendants rely upon untrue factual assertions and falsely sworn affirmations.  (*Id.*, at 5.)  Plaintiff argues that Defendants were personally involved in the alleged constitutional violations because they were, *inter alia*, aware of the actions taken against him.  (*Id.*, at 10–12.)  Plaintiff argues that he "has never had a pre-deprivation judicial trial" or a "post-deprivation trial."  (*Id.*, at 12.)  Plaintiff argues that he has satisfied the

"punishment" element for his Bill of Attainder claim via the $22,500.00 penalty exacted upon him.  (*Id.*, 13–14.)

### 3.   Defendants' Reply Memorandum of Law

In reply, Defendants argue that a Local Rule 56.1 statement is not required because "*Cassidy I* is referred to repeatedly in Plaintiff's Complaint" and that "Plaintiff named numerous defendants identical to those in this case."  (Dkt. No. 29, at 6.)  Defendants argue that "Plaintiff does not make any direct argument to counter [their] motion on the grounds that his claims are barred by the applicable statute of limitations."  (*Id.*, at 7.)  Similarly, Defendants argue that "Plaintiff makes no argument to counter [their] argument that [the Bill of Attainder Clause] specifies the 'State' and a 'legislative act,' and thus none of the individual defendants here could be held liable[.]"  (*Id.*, at 10.)

### 4.   Plaintiff's Sur-Reply

Plaintiff filed a sur-reply with permission from the Court.  (Dkt. No. 32.)  Plaintiff again argues that Local Rule 56.1 requires Defendants to present a "Statement of Material Facts" and that "[p]leadings from other cases on other issues" are not properly a part of the record herein. (Dkt. No. 33, at 2.)  Plaintiff argues that he "must be given his chance to admit, deny, or rebut" Defendants' assertions, and that this case should proceed to discovery in light of the factual disputes.  (*Id.*)

## II.   GOVERNING LEGAL STANDARDS

### A.   Motion to Dismiss for Lack of Subject-Matter Jurisdiction

"It is a fundamental precept that federal courts are courts of limited jurisdiction."  *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978).  Generally, a claim may be properly dismissed for lack of subject-matter jurisdiction where a district court lacks

constitutional or statutory authority to adjudicate it.  *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000).  A district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject-matter jurisdiction.  *Makarova*, 201 F.3d at 113.  The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence.  *Id.* (citing *Malik v. Meissner*, 82 F.3d 560, 562 [2d Cir. 1996]).  When a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff.  *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Marakova*, 201 F.3d at 113).

**B.     Motion to Dismiss for Failure to State a Claim**

It has long been understood that a dismissal for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6), can be based on one or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2); or (2) a challenge to the legal cognizability of the claim.  *Jackson v. Onondaga Cnty.*, 549 F. Supp. 2d 204, 211, nn. 15–16 (N.D.N.Y. 2008) (McAvoy, J., adopting Report-Recommendation on *de novo* review).

Because such dismissals are often based on the first ground, some elaboration regarding that ground is appropriate.  Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain "a *short and plain* statement of the claim *showing* that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  In the Court's view, this tension between permitting a "short and plain statement" and requiring that the statement "show[]" an entitlement to relief is often at the heart of misunderstandings that occur regarding the pleading standard established by Fed. R. Civ. P. 8(a)(2).

On the one hand, the Supreme Court has long characterized the "short and plain"

pleading standard under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal." *Jackson*, 549 F. Supp. 2d at 212, n. 20 (citing Supreme Court cases).  On the other hand, the Supreme Court has held that, by requiring the above-described "showing," the pleading standard under Fed. R. Civ. P. 8(a)(2) requires that the pleading contain a statement that "give[s] the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests." *Jackson*, 549 F. Supp. 2d at 212, n. 17 (citing Supreme Court cases) (emphasis added).

The Supreme Court has explained that such *fair notice* has the important purpose of "enabl[ing] the adverse party to answer and prepare for trial" and "facilitat[ing] a proper decision on the merits" by the court. *Jackson*, 549 F. Supp. 2d at 212, n. 18 (citing Supreme Court cases); *Rusyniak v. Gensini*, 629 F. Supp. 2d 203, 213 & n. 32 (N.D.N.Y. 2009) (Suddaby, J.) (citing Second Circuit cases).  For this reason, as one commentator has correctly observed, the "liberal" notice pleading standard "has its limits."  2 *Moore's Federal Practice* § 12.34[1][b] at 12–61 (3d ed. 2003).  For example, numerous Supreme Court and Second Circuit decisions exist holding that a pleading has failed to meet the "liberal" notice pleading standard. *Rusyniak*, 629 F. Supp. 2d at 213, n. 22 (citing Supreme Court and Second Circuit cases); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–82 (2009).

Most notably, in *Bell Atlantic Corp. v. Twombly*, the Supreme Court reversed an appellate decision holding that a complaint had stated an actionable antitrust claim under 15 U.S.C. § 1.  550 U.S. 544 (2007).  In doing so, the Court "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. 556–51. Rather than turn on the *conceivability* of an actionable claim, the Court clarified, the "fair notice"

standard turns on the *plausibility* of an actionable claim. *Id.* at 555–70. They explained that, while this does not mean that a pleading need "set out in detail the facts upon which [the claim is based]," it does mean that the pleading must contain at least "some factual allegation[s]." *Id.* at 555 n. 3. More specifically, the "[f]actual allegations must be enough to raise a right of relief above the speculative level [to the plausible level]," assuming (of course) that all the allegations in the complaint are true. *Id.*

As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense . . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n] that—the pleader is entitled to relief." *Id.*, at 679 [internal quotation marks and citations omitted]. However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.*, it "does not impose a probability requirement." *Twombly*, 550 U.S. at 556.

Because of this requirement of factual allegations plausibly suggesting an entitlement to relief, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by merely conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Similarly, a pleading that only "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id.* (quoting *Twombly*, 550 U.S. at 557). Rule

8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*
(citations omitted).

Finally, a few words are appropriate regarding what documents are considered when a
dismissal for failure to state a claim is contemplated.  Generally, when contemplating a dismissal
pursuant to Fed. R. Civ. P. 12(b)(6) or Fed. R. Civ. P. 12(c), the following matters outside the
four corners of the complaint may be considered without triggering the standard governing a
motion for summary judgment: (1) documents attached as an exhibit to the complaint or answer,
(2) documents incorporated by reference in the complaint (and provided by the parties), (3)
documents that, although not incorporated by reference, are "integral" to the complaint, or (4)
any matter of which the court can take judicial notice for the factual background of the case.[4]

---

[4]        *See* Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a
pleading is a part thereof for all purposes."); L-*7 Designs, Inc. v. Old Navy, LLC*, No. 10-573,
2011 WL 2135734, at *1 (2d Cir. June 1, 2011) (explaining that conversion from a motion to
dismiss for failure to state a claim to a motion for summary judgment is not necessary under Fed.
R. Civ. P. 12[d] if the "matters outside the pleadings" in consist of [1] documents attached to the
complaint or answer, [2] documents incorporated by reference in the complaint (and provided by
the parties), [3] documents that, although not incorporated by reference, are "integral" to the
complaint, or [4] any matter of which the court can take judicial notice for the factual
background of the case); *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)
(explaining that a district court considering a dismissal pursuant to Fed. R. Civ. 12(b)(6) "may
consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and
documents incorporated by reference in the complaint. . . .  Where a document is not
incorporated by reference, the court may neverless consider it where the complaint relies heavily
upon its terms and effect, thereby rendering the document 'integral' to the complaint. . . .
However, even if a document is 'integral' to the complaint, it must be clear on the record that no
dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that
there exist no material disputed issues of fact regarding the relevance of the document.")
[internal quotation marks and citations omitted]; *Chambers v. Time Warner, Inc.*, 282 F.3d 147,
152 (2d Cir. 2009) ("The complaint is deemed to include any written instrument attached to it as
an exhibit or any statements or documents incorporated in it by reference.") (internal quotation
marks and citations omitted); *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72
(2d Cir.1995) (per curiam) ("[W]hen a plaintiff chooses not to attach to the complaint or
incorporate by reference a [document] upon which it solely relies and which is integral to the
complaint," the court may nevertheless take the document into consideration in deciding [a]

III.    **ANALYSIS**

A.    **Whether Sovereign Immunity Bars Plaintiff's Claims Against Defendants WBC and NYSIF and the Individual Defendants in Their Official Capacities**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth in Defendants' memoranda of law.  *See, supra,* Parts I.C.1. and I.C.3. of this Decision and Order.  To those reasons, the Court adds the following analysis.

"[T]he Eleventh Amendment bars a damages action against a State in federal court,' including 'when State officials are sued for damages in their official capacity."  *Kentucky v. Graham*, 473 U.S. 159, 169 (1985).  "The doctrine of sovereign immunity is jurisdictional in nature" and thus may be resolved on matters outside the pleadings.  *Makarova.*, 201 F.3d at 113 (citations omitted).  There are three recognized exceptions to the sovereign immunity bar: (1) where a state waives its Eleventh Amendment immunity and consents to suit; (2) where Congress has abrogated the states' sovereign immunity by acting pursuant to a grant of constitutional authority; and (3) where the suit is against a state official in his or her official capacity and seeks prospective injunctive relief.  *Nassau & Suffolk Cnty. Taxi Owners Ass'n., Inc. v. State*, 336 F. Supp. 3d 50, 65 (E.D.N.Y. 2018) (citing cases).

"*Ex parte Young* established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution."  *Brokamp v. James*, 573 F. Supp. 3d 696, 708 (N.D.N.Y. 2021) (Hurd, J.) (citing 209 U.S. 123 [1908]).  Under *Ex parte Young*, a plaintiff challenging a state statute's constitutionality may seek injunctive relief against the state official(s) responsible for its enforcement.  *Brokamp*, 573 F. Supp. 3d at 708 (citing *Ford v.*

---

defendant's motion to dismiss, without converting the proceeding to one for summary judgment.") (internal quotation marks and citation omitted).

*Reynolds*, 316 F.3d 351, 354–55 [2d Cir. 2021]).  To make such a claim, the plaintiff must allege

(1) an ongoing violation of federal law; and (2) "relief properly characterized as prospective."

*Id.* (citing *In re Deposit Ins. Agency*, 482 F.3d 612, 618 [2d Cir. 2007]).  While declaratory

judgments may be properly characterized as prospective relief, "declaratory relief is not

permitted under *Ex parte Young* when it would serve to declare only past actions in violation of

federal law[.]" *Brown v. N.Y.*, 975 F. Supp. 2d 209, 225 (N.D.N.Y. 2013) (D'Agostino, J.)

(citing *Tigrett v. Cooper*, 855 F. Supp. 2d 733, 744 [W.D. Tenn. 2012] [collecting cases]).

Defendants argue that WCB and NYSIF are state "agencies" or "entities" entitled to

sovereign immunity.  (Dkt. No. 19-2, at 14.)  Defendants argue that "Congress has not abrogated

the states' immunity with regard to the type of claims brought by the Plaintiff."  (*Id.*)

Furthermore, Defendants argue that NYSIF and WCB "members or employees" are equally

entitled to immunity relative to their "official capacities."  (*Id.*, at 15.)  Defendants argue that,

although Plaintiff "seeks a preliminary injunction barring collection activities . . . , the ultimate

relief he seeks is related to an alleged bill of attainder and contract clause violation related to the

original imposition of the penalties."  (*Id.*)  Defendants argue that in *Cassidy I* the Court

dismissed similar claims against "these very same defendants" on immunity grounds.  (*Id.*)

In opposition, Plaintiff argues that he "will move the Federal Court for a permanent

injunction against [NYSIF] forcing that organization to abandon its secret cancellation of polices

and lack of due process as evidence clearly demonstrated in [*Cassidy I*]."  (Dkt. No. 24, at 8.)

Moreover, Plaintiff argues that he "has twice been the victim of false sworn affirmations and

declarations made in the AG's name by assistant attorneys general" and that he will seek "a

permanent injunction against her activities."  (*Id.*)

As an initial matter, the Court finds that a Local Rule 56.1 Statement is unnecessary

because the Court may take judicial notice of the record in *Cassidy I*, and that, in any event, matters outside the pleadings are properly considered on a motion challenging subject-matter jurisdiction (without requiring the conversion of the motion into one for summary judgment). Notwithstanding, even when read liberally, the Complaint does not seek relief properly characterized as prospective. Rather, Plaintiff appears to challenge the constitutionality of New York State's Workers' Compensation Law ("WCL") as it was applied to the 2016 penalty. The injunctive relief he seeks would merely bar Defendants from collecting an existing judgment obtained in connection with a past violation. Under the circumstances unique to this case, Plaintiff cannot be permitted to reframe his past alleged injury as a prospective or future harm warranting injunctive relief solely to circumvent sovereign immunity.

Accordingly, the Court finds that Plaintiff's claims do not implicate the *Ex Parte Young* exception, and that WCB and NYSIF, as well as the individual defendants insofar as they are sued in their official capacities as state actors, are entitled to sovereign immunity.

### B.    Whether the Statute of Limitations Bars Plaintiff's Claims

After carefully considering the matter, the Court answers this question in the affirmative for the reasons set forth in Defendants' memoranda of law. *See, supra,* Parts I.C.1. and I.C.3. of this Decision and Order. To those the reasons, the Court adds the following discussion.

"In [S]ection 1983 actions, the applicable limitations period is found in the 'general or residual [state] statute [of limitations] for personal injury actions[.]'" *Pearl v. City of Long Beach*, 296 F.3d 76 (2d Cir. 2002) (quoting *Owens v. Okure*, 488 U.S. 235, 249–50 [1989]). In New York, Section 1983 claims are "subject to a three-year statute of limitations, running from the time a plaintiff knows or has reason to know of the injury giving rise to the claim." *Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (internal quotation marks and citations omitted);

*accord* N.Y. C.P.L.R. § 214(5).

Defendants argue that Plaintiff's claims are barred by the three-year statute of limitations. (Dkt. No. 19-2, at 18.)  Defendants argue that "Plaintiff was aware of the initial $12,000 penalty nearly 5 years before he filed his Complaint, and alleges he was advised of the penalty on June 2, 2016."  (*Id.*)  Furthermore, Defendants argue "[t]o the extent that Plaintiff claims that WCB, via the IC-2 system, levied a judgment on him or about November 14, 2019," such judgment "had been taken in error, and was vacated by WCB on or about December 6, 2019."  (*Id.*, at 19.)

Plaintiff alleges that, because the workers' compensation policy at-issue is a "contract," New York's six-year statute of limitations regarding contract actions should apply.  (Compl. ¶ 42.)  Nonetheless, Plaintiff alleges that, because he "did not become aware of [Defendants Raga and Dorsett] cancelling [the] workers' compensation policy [] until April 2020[,]" the three-year "Federal Statute of Limitations runs until April 2023."  (*Id.*, ¶ 44.)

Plaintiff's Complaint alleges a constitutional injury inflicted by state actors that resulted in harm—not a breach of contract.  (Compl.)  Therefore, the Court finds that Plaintiff's claims are subject to the three-year statute of limitations governing Section 1983 claims in New York. Further, Plaintiff's allegations in the Complaint belie his assertion that that he did not have reason to know about the alleged constitutional injury until April 2020.  Plaintiff alleged that his constitutional injury occurred in or around June 2016, when WCB issued him an initial $12,000.00 penalty.  (Compl. ¶ 8.)  The fact that the workers compensation policy was later cancelled does not negate the fact that Plaintiff was already on notice of the injury giving rise to his claims.  As discussed above, Plaintiff's claims are squarely aimed at the penalty imposed by WCB, which Plaintiff first received notice of in June 2016—more than three years prior to initiating the instant action in May of 2021.

Accordingly, the Court finds that Plaintiff's Section 1983 claims are time-barred.

**C.   Whether, in the Alternative, Plaintiff Has Stated a Claim Pursuant to Section 1983**

After carefully considering the matter, the Court answers the question in the negative for the reasons stated in Defendants' memoranda of law.  *See, supra,* Parts I.C.1. and I.C.3. of this Decision and Order.  To those reasons, even assuming Plaintiff's claims were timely, the Court adds the following analysis.

"Section 1983 is not itself a source of substantive rights[,] but merely provides a method for vindicating federal rights elsewhere conferred[.]"  *Patterson v. County of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 [1979]).  To state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege "(1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of law . . . law."  *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640 [1980] [internal quotations omitted]).  "Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983."  *Wright v.* Smith, 1 F.3d 496, 501 (2d Cir. 1994).  Thus, the plaintiff must show "a tangible connection between the acts of a defendant and the injuries suffered."  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  Notably, "vicarious liability is inapplicable to . . . [Section] 1983 suits."  *Iqbal*, 556 U.S. at 676.

 Article I, Section 10 of the United States Constitution declares that "[n]o State shall . . . pass any Bill of Attainder [or] ex post facto Law."  Const. art 1 § 10, cl. 1.  "A bill of attainder is 'a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial.'"  *Scheidel v. U.S.*, 09-CV-1223, 2010 WL 3880873, at *3 (N.D.N.Y. Sept. 28, 2010) (Suddaby, J.) (quoting *Nixon v. Admin. of Gen. Servs.*,

433 U.S. 425, 468 [1977]).  To determine "whether a particular statute is a bill of attainder, the analysis necessarily requires an inquiry into whether the three definitional elements—[1] specificity in identification, [2] punishment, and [3] lack of a judicial trial—are contained in the statute."  *U.S. v. O'Brien*, 391 U.S. 367, 383 n. 30 (1968); *see also ACORN v. U.S.*, 618 F.3d 125, 135–36 (2d Cir. 2010) (discussing the "three elements of an unconstitutional bill of attainder" identified by the Supreme Court).  Notably, "[a] legislature may legitimately create a 'class of one' for many purposes, *see, e.g., Nixon*, 433 U.S. at 472–73, . . . but not for punishment."  *Consolidated Edison Co. of N.Y., Inc. v. Pataki*, 292 F.3d 338, 350 (2d Cir. 2002).

The United States Constitution provides, in relevant part, that "[n]o State shall . . . pass any . . . Law impairing the Obligations of Contracts[.]"  U.S. Const. art. I, § 10, cl. 1.  "Although the language of the Contract Clause is seemingly absolute, its language is 'necessarily limited by the State's sovereign power to protect the health, safety and welfare of its citizens.'"  *Waltz v. Bd. of Educ. of Hoosick Falls Cent. Sch. Dist.*, 12-CV-0507, 2013 WL 4811958, at *5 (N.D.N.Y. Sept. 10, 2013) (Suddaby, J.) (quoting *Donohue v. Paterson*, 715 F. Supp. 2d 306, 318 [N.D.N.Y. 2010] [citing *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 241 (1978)]). "[C]ourts have said that only legislative action can violate the Contract Clause."  *Waltz*, 2013 WL 4811958, at *6 (cleaned up).  In analyzing the extent to which the Contract Clause limits State power, courts "pose three questions to be answered in succession: (1) is the contractual impairment substantial and, if so, (2) does the law serve a legitimate public purpose such as remedying a general social or economic problem and, if such purpose is demonstrated, (3) are the means chosen to accomplish this purpose reasonable and necessary."  *Buffalo Teachers Federation v. Tobe*, 464 F.3d 362, 368 (citing *Energy Reserves Group, Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 411–13 [1983]).

Defendants argue that "the individual defendants in this case . . . are not the 'State' and cannot be held liable for passing any Bill of Attainder." (Dkt. No. 19-2, at 25–26.) Defendants argue that "New York's Legislature has made clear that an employer's failure to carry Workers' Compensation insurance constitutes 'an immediate serious danger to public health, safety or welfare.'" (*Id.*, at 26 [citation omitted].) Defendants argue that "[t]he employer has 30 days to request a redetermination of the penalties" and may ultimately appeal an adverse decision to the New York Court of Appeals. (*Id.*) Moreover, Defendants argue that Plaintiff does not adequately allege the "specificity" and "punishment" elements. (*Id.*, at 27–34.) In any event, Defendants argue that "Plaintiff cannot establish the 'lack of a judicial trial' element of a Bill of Attainder Clause claim" because the WCL "affords employers an opportunity to challenge any penalties assessed, as well as procedures to appeal the results of the WCB's review to [the State's appellate courts]." (*Id.*, at 33–34.)

Relative to the Contracts Clause claim, Defendants argue that Plaintiff "does not allege that his August 2015 'contract' with Harker pre-dated the applicable penalty provisions of the . . . WCL," which has been in place since 1922. (*Id.*, at 36.) Defendants argue that, even assuming Plaintiff adequately plead as much, the claim fails because "the WCL serves 'a significant and legitimate public purpose[.]'" (*Id.*, at 37.)

Plaintiff alleges that he is an "affected person" unlawfully targeted with punishment due to his "Not In Compliance" status. (Compl. ¶¶ 20–21.) Plaintiff argues that he has established Defendants' personal involvement because they were "informed of the violation through a report or appeal, failed to remedy the wrong, . . . created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom[.]" (Dkt. No. 24, at 10 [citations omitted].) Plaintiff argues that Defendants "exhibited deliberate

indifference . . . by failing to act on information indicating that unconstitutional acts were occurring[.]" (*Id.*)  Plaintiff acknowledges that a judicial remedy exists for contesting State agency penalties but argues that he never received notification of the policy cancellation and that he never had a pre- or post-deprivation hearing.

Even affording Plaintiff considerable leeway as a *pro se* litigant, the Court finds that the Complaint fails to state a cognizable claim pursuant to Section 1983.  Read liberally, Plaintiff's Complaint appears to challenge the WCL as both an unlawful bill of attainder and a substantial impairment of contractual obligations.  However, Plaintiff does not allege that the named Defendants in this action were personally involved in any constitutional deprivation, except that they enforced this facially neutral law.  Moreover, Plaintiff fails to adequately plead the substantive elements of each claim.  For example, the bill of attainder claim fails because the Complaint fails to allege facts plausibly suggesting the "specificity in identification" element of that claim.  Plaintiff's contention that he has been identified as "Not-In-Compliance," and thus subject to penalties, is simply too attenuated to be considered a bill of attainder.  Similarly, the Contracts Clause claim fails because the Complaint lacks factual allegations plausibly challenging whether WCL lacks legitimate public purpose, or whether the law accomplishes such goal(s) through reasonable and necessary means.[5]

In sum, the Court finds that, as an alternative grounds for dismissal, Plaintiff has failed to

---

[5]     The Court notes that, in construing the Complaint to raise the strongest arguments possible, the Court has not inferred a due process claim relative to Plaintiff's lack of pre- and post-deprivation hearing(s), or any similar allegation that Defendants failed to provide due process in accordance with WCL's penalty procedure.  Plaintiff previously litigated that claim in *Cassidy I*, which was dismissed at the District Court level and recently affirmed by the Second Circuit.  Accordingly, the Court finds that the principles of *res judicata* and/or collateral estoppel preclude re-litigating such a claim.

plausibly allege a cause of action against Defendants under Section 1983.[6]

> **D.    Whether the Complaint Should Be Dismissed *Sua Sponte* as Against Defendant Dorsett**

Although Defendant Dorsett has not joined in the current motion, the Court nevertheless finds that the claims against her warrant dismissal based on the reasons and authorities discussed above in Parts III.A., III.B. and III.C. of this Decision and Order.  To that, the Court adds the following.

"The Court has the authority under Rule 12(b)(6) to dismiss a complaint *sua sponte* for 'failure to state a claim upon which relief may be granted' if the complaint lacks an arguable basis either in law or fact."  *MPM Silicones, LLC v. Union Carbide Corp.*, 931 F Supp. 2d 387, 396 (N.D.N.Y. 2013) (Kahn, J.) (collecting cases); *see also Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (recognizing that district court has power to sua sponte dismiss pro se complaint based on frivolousness notwithstanding fact that plaintiff has paid statutory filing fee).  For the reasons discussed above, the Court finds that, by so clearly failing to allege facts plausibly suggesting that any Defendant violated any constitutional right, the Complaint lacks an arguable basis either in law or fact.  Accordingly, the Court dismisses the remaining claims against Defendant Dorsett *sua sponte*.

For these reasons, it is

**ORDERED** that Defendants' motion to dismiss (Dkt. No. 19) is **<u>GRANTED</u>**; and it is further

**ORDERED** that the Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

---

[6]    Because the Court has found that multiple alternative grounds exist on which to base a dismissal of Plaintiff's Complaint against Defendants, the Court need not, and does not, evaluate Defendants' remaining alternative argument that Plaintiff has failed to serve Defendants James and Matula.

Dated: March 7, 2023
    Syracuse, New York


Glenn T. Suddaby
U.S. District Judge